HILL et al. v. WALKER.

(Circuit Court of Appeals, Eighth Circuit. February 1, 1909.)

No. 2,766.

1. COURTS (§ 279*)—JURISDICTION—OFFICE OF JURISDICTIONAL ALLEGATIONS IN COMPLAINT IN FEDERAL COURTS.

Jurisdictional allegations in the complaint in federal courts are not made as a basis for proof at the trial, but to found the court's jurisdiction of the action at its commencement.

[Ed. Note.—For other cases, see Courts, Dec. Dig. § 279.*]

2. COURTS (§ 280*)—PROPER JURISDICTIONAL ALLEGATIONS MAKE PRIMA FACIE CASE.

A proper allegation of jurisdictional facts in the complaint in federal courts creates a prima facie case in favor of jurisdiction.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 816–818; Dec. Dig. § 280.*]

3. COURTS (§ 280*)—EFFECT OF PRIMA FACIE CASE MADE BY PROPER ALLEGATION OF JURISDICTIONAL FACTS.

The prima facie case in favor of jurisdiction, made by a proper allegation of jurisdictional facts in the complaint, continues until it is overcome by evidence which convinces the mind to a legal certainty that the court in fact has not jurisdiction of the action.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 816–818; Dec. Dig. § 280.*]

4. COURTS (§ 339*)—STATE CODES OF PROCEDURE—ALL DEFENSES IN ANSWER—NOT BINDING ON FEDERAL COURTS.

State codes of procedure are intended for courts of general jurisdiction. Their provision that objections to the jurisdiction of the court shall be taken by answer is not applicable to federal courts, because they are courts of limited jurisdiction.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 914; Dec. Dig. § 339.*

Jurisdiction as affected by state laws, see note to Barling v. Bank of British North America, 1 C. C. A. 513.]

5. COURTS (§ 279*) — FEDERAL COURTS—GENERAL DENIAL—NOT PROPER PLEADING TO RAISE OBJECTION TO JURISDICTION.

Neither the general denial under state codes nor the general issue at common law is a proper method of challenging the jurisdiction of federal courts.

[Ed. Note.—For other cases, see Courts, Dec. Dig. § 279.*]

6. REMOVAL OF CAUSES (§ 108*)—JURISDICTION—DEFECTS—PROCEDURE.

Act March 3, 1875, c. 137, § 5, 18 Stat. 472 (U. S. Comp. St. 1901, p. 511), covers the entire field of dismissals for defects of jurisdiction arising upon the evidence, and not only declares the duty of federal courts upon that subject, but also prescribes the showing necessary to the exercise of the power which it grants.

[Ed. Note.—For other cases, see Removal of Causes, Dec. Dig. § 108.*]

7. REMOVAL OF CAUSES (§ 108*)—JURISDICTION—DISMISSAL—EVIDENCE.

When the complaint contains proper jurisdictional allegations, in order to justify the court in dismissing an action for want of jurisdiction, under Act March 3, 1875, c. 137, § 1, 18 Stat. 470 (U. S. Comp. St. 1901, p. 508), evidence must be produced which convinces the mind to a legal cer-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

tainty "that such suit does not really and substantially involve a controversy properly within the jurisdiction of said circuit court."

Roberts v. Lewis, 144 U. S. 653, 12 Sup. Ct. 781, 36 L. Ed. 579, examined and distinguished.

[Ed. Note.—For other cases, see Removal of Causes, Dec. Dig. § 108.*]

8. APPEAL AND ERROR (§ 185*) — ACTION AT LAW TRIED TO COURT WITHOUT JURY—GENERAL FINDING—OBJECTIONS TO JURISDICTION.

When an action at law is tried to the court without a jury, and there is a general finding in favor of plaintiff, and no objection is made to the jurisdiction at the trial, an appellate court cannot look into the evidence contained in a bill of exceptions to ascertain whether jurisdiction was properly proven at the trial.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1166–1178; Dec. Dig. § 185.*]

9. COURTS (§ 323*)—JURISDICTION—EVIDENCE OF RESIDENCE—CITIZENSHIP.

Evidence in this case examined, and *held* to show plaintiff's citizenship as alleged in the complaint, though the direct testimony only established his residence.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 885–886; Dec. Dig. § 323.*]

Sanborn, Circuit Judge, concurs as to the last two grounds only. Hook, Circuit Judge, dissents.

(Syllabus by the Court.)

In Error to the Circuit Court of the United States for the Eastern District of Missouri.

George B. Webster (Harry E. Sprague and Robert Funkhouser, on the brief), for plaintiffs in error.

Henry B. Davis and John A. Harrison, for defendant in error.

Before SANBORN and HOOK, Circuit Judges, and AMIDON, District Judge.

AMIDON, District Judge. This action was brought by George W. Walker, doing business as the Walker Stave Company,. against the defendants (the plaintiffs in error), to recover a balance claimed to be due on a contract entered into between the parties on the 23d day of June, 1904, by the terms of which the plaintiff agreed to sell, and the defendants to purchase, 2,000,000 staves of different grades, delivery to be made in about equal quantities in each month down to November 1st of that year. It is not necessary in this place to state the issues more fully. The action was tried before the court without a jury, pursuant to stipulation. A general finding in favor of the plaintiff was made, and judgment entered accordingly. The judgment is chiefly attacked in this court upon the ground that there was no adequate proof of jurisdiction. The complaint properly states that the plaintiff is a citizen of the state of Illinois, and the defendant a corporation organized under the laws of Missouri. The answer is voluminous, raising many issues as to the merits of the controversy, and also contains a general denial which it is claimed puts in issue the citizenship of the plaintiff. On the trial Mr. Walker, while testifying as a witness was asked, "Where do you reside?" and answered, "I live in Vandalia, Ill." It is now assigned as a cause for impeaching the judgment that this testimony constitutes the only evidence

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

as to plaintiff's citizenship. The inaccuracy of the proof was in no way challenged in the trial court, but is now presented here for the first time.

In passing upon this question, it is necessary to distinguish clearly between failure to plead jurisdictional facts in the complaint and a deficiency of proof on that subject in the evidence. The jurisdiction of federal courts, being limited, is aided by no presumption. Until the facts requisite to that jurisdiction are brought upon the record, there is no foundation for the exercise of any judicial power in the cause. It has therefore been uniformly held that these facts must appear with certainty and precision either in the complaint alone, or in the complaint when supplemented by other documents constituting a part of the record proper. Their absence cannot be waived, because they pertain to jurisdiction of the subject-matter and not of the person. By far the greater number of cases in which judgments have been set aside for jurisdictional reasons fall under this head. The facts essential to jurisdiction were not brought upon the record. The only other class is where want of jurisdiction has been disclosed by the evidence. In all such cases, with possibly one or two exceptions, the defect has appeared not from a failure to prove the allegations of the complaint, but by direct and positive evidence showing that the suit was not within the cognizance of federal courts. The present case falls under neither of these classes. Here the jurisdictional facts are alleged with certainty and precision, and the evidence does not show that jurisdiction is wanting.

The jurisdictional averments of the complaint in federal courts are not made as a basis for proof at the trial, but to found jurisdiction of the suit. They are not held in suspense until supported by proof, like allegations respecting the merits; but immediately, upon the filing of the complaint, they accomplish their purpose. Thereupon, by virtue of such allegations, plenary jurisdiction of the court over the cause arises. That jurisdiction is not suspended by a denial in the answer or defeated by such a denial combined with an inaccuracy or insufficiency of proof on the subject, but continues unimpaired until evidence is produced showing clearly that jurisdiction in fact does not exist. What, then, is the force and effect of a proper pleading of jurisdictional facts? (1) It makes a prima facie case in favor of jurisdiction. (2) Such jurisdiction continues until evidence is produced which convinces the mind to a "legal certainty" that the court in fact is without lawful cognizance of the suit.

Before examining the authorities which we believe support these propositions, it will be advantageous to consider the conformity act of June 1, 1872 (17 Stat. 196, c. 255), and the act of March 3, 1875, c. 137, § 1, 18 Stat. 470 (U. S. Comp. St. 1901, p. 508), section 5 of which defines the duty of federal courts as to the dismissal of suits for defects of jurisdiction arising upon the evidence. Before the passage of these statutes the jurisdiction of these courts could only be challenged by a separate plea which presented the question clearly as a subject for actual litigation. There is nothing in either of the acts which necessitates a change in this practice, and there are substantial reasons for the continuance either of that method, or of some-

thing no less direct and clear. Most of the state codes embodying the reformed procedure require all pleas and defenses to be set up in the answer. These codes, however, are intended to regulate the practice in courts of general jurisdiction. Under them the objection that a cause is not properly within the jurisdiction of the court very seldom arises; and when it does arise it is shown upon the face of the pleading by the nature of the cause of action, and therefore requires no investigation of matters of fact. The jurisdiction of our national courts, on the contrary, being limited, every cause brought before them presents a question of jurisdiction, and the subject often involves a serious controversy upon the facts. This fundamental difference between the courts of the states and of the nation justifies a difference in practice. The existence of jurisdiction being a part of every suit in the federal courts, and arising in much the greater number of cases out of facts wholly independent of the cause of action, the issue upon that subject ought not to be commingled in the answer with issues upon the merits. Such a practice tends to obscure this question of primary importance and thus cause it to be overlooked through inadvertence. It also leads to confusion in the trial of the cause, as was early pointed out by Judge Hammond in Refining Co. v. Wyman (C. C.) 38 Fed. 574. But the greatest objection is that it is idle and oppressive to require litigants to come before the court with their witnesses, prepared to try a cause upon the merits, when the jurisdiction of the court to hear the merits is in controversy. It is a noteworthy fact that, since the passage of the acts above referred to, the same as before, whenever it is proposed to really controvert the question of jurisdiction, the issue is raised by a separate plea. That has at all times been recognized at the circuit as the better practice. The general denial is now a part of nearly every answer in a code state, and, as a rule, is interposed simply as a catch-all to cover any matter that may have been omitted through inadvertence. To allow such fundamental subjects as jurisdiction to be litigated under such an issue is simply to invite inadvertencies on the one hand and sharp practice on the other. There being substantial reasons for the presentation of this issue in the federal courts apart from the merits, the conformity act does not preclude them from adopting and enforcing such a practice on the subject as will be most conducive to a fair and efficient administration of justice in those tribunals.

Speaking of the conformity act, the Supreme Court says, in Indianapolis & St. Louis Railroad Co. v. Horst, 93 U. S. 291, 23 L. Ed. 898:

"The conformity is required to be as near as may be—not as near as may be possible, or as near as may be practicable. This indefiniteness may have been suggested by a purpose: It devolved upon the judges to be affected the duty of construing and deciding, and gave to them the power to reject, as Congress doubtless expected they would do, any subordinate provision in such state statutes which, in their judgment, would unwisely incumber the administration of the law, or tend to defeat the ends of justice in their tribunals."

This court also, speaking by Judge Sanborn in the case of Collin County National Bank v. Hughes, 155 Fed. 389, 83 C. C. A. 661, says:

"The Supreme Court and this court have held that strict conformity to the practice and proceedings in the state courts is impracticable, and that this section does not require the courts of the United States to adopt any rule of pleading, practice, or procedure enacted by state statute or announced by the decision of state courts which would restrict their jurisdiction or unwisely incumber the administration of justice in their tribunals."

Congress has also clearly intimated that jurisdictional questions may be raised by plea. Section 1011 of the Revised Statutes was amended by the act of February 18, 1875, c. 80, 18 Stat. 318 (U. S. Comp. St. 1901, p. 715), more than three years after the passage of the conformity act, so as to read:

"There shall be no reversal in the Supreme Court or in a Circuit Court upon a writ of error for any error in ruling any plea in abatement other than a plea to the jurisdiction."

Here is a manifest indication in a federal statute that jurisdictional questions may properly be raised by plea in abatement, and, of course, when there is a federal statute on a subject of practice, that is paramount to state statutes notwithstanding the conformity act. In our judgment, therefore, the rule of the codes that all pleas and defenses shall be embodied in the answer is not obligatory upon the federal courts when dealing with the subject of jurisdiction.

But if the code practice were controlling, it affords no justification for presenting objections to the jurisdiction of the court in the covert and indirect form of a general denial. As Chief Justice Ryan early pointed out, the rule of the codes that all defenses shall be contained in the answer has in no way changed the nature of the defenses. Dutcher v. Dutcher, 39 Wis. 651. Pleas to the jurisdiction were always affirmative, and the burden of their proof rested upon the defendant. The fact that under the codes they may be combined in the answer with defenses on the merits has not changed their character. They are still affirmative in their nature, and should be supported with affirmative proof by the party interposing them.

Again, though under the codes pleas in abatement must be united in the answer with pleas in bar, they cannot be so combined at the trial. On the contrary, their nature is so divergent that, though combined in the answer, they must be tried separately. This is not only the rule in the federal courts (Kirven v. Virginia-Carolina Chemical Co., 145 Fed. 288, 291, 76 C. C. A. 172; Ashley v. Board, 8 C. C. A. 455, 468, 60 Fed. 55, 68; Terry v. Davy, 46 C. C. A. 141, 143, 107 Fed. 50, 52; Toledo Traction Co. v. Cameron, 137 Fed. 48, 54, 69 C. C. A. 28; Wetmore v. Rymer, 169 U. S. 115, 120, 18 Sup. Ct. 293, 42 L. Ed. 682), but has likewise been found necessary in state courts controlled by the code practice (Board of Supervisors v. Van Stralen, 45 Wis. 675; Id., 46 Wis. 374, 1 N. W. 106; Wells v. Patton, 50 Kan. 732, 33 Pac. 15; Christian v. Williams, 35 Mo. App. 297). Inasmuch as pleas to the jurisdiction are by their nature so distinct from defenses involving the merits as to require a separate trial, there is no foundation in reason for the rule which requires both to be combined in the answer.

But the present case is independent of state practice. It is controlled by section 5 of the act of 1875. Under that statute as con-

strued by the Supreme Court, the question here raised relates to the burden of proof rather than the form of pleading. Section 5 reads as follows:

"If, in any suit commenced in a Circuit Court or removed from a state court to a Circuit Court of the United States, it shall appear to the satisfaction of said Circuit Court, at any time after such suit has been brought or removed thereto that such suit does not really and substantially involve a dispute or controversy properly within the jurisdiction of said Circuit Court, or that the parties to said suit have been improperly or collusively made or joined, either as plaintiffs or defendants, for the purpose of creating a case cognizable or removable under this act, the said Circuit Court shall proceed no further therein, but shall dismiss the suit or remand it," etc.

We cannot understand this statute without considering the mischief which it was designed to remedy. Under the old practice, when a want of jurisdiction did not appear on the face of the record, the objection could only be made by plea in abatement. Pleading to the merits operated as a final waiver of the defect, binding upon the court as well as the litigants. Under this rule the court would often discover on the trial that it had no jurisdiction of the case, and yet be without power to take judicial notice of the fact. Furthermore, by section 1 of the act of 1875 the restrictions upon suits by assignees of bills, notes, and other choses in action which existed under the original judiciary act of 1789 were swept away and the door opened wide for fraud by collusive transfers. Section 5, quoted above, was framed to meet both of these difficulties. Its most notable feature is that it deals only with those defects of jurisdiction which are disclosed by evidence. For those which appear on the face of the pleadings, there was no need of legislation. Whenever the complaint alone, or aided by the record, failed to show the existence of jurisdiction, federal courts had from the beginning taken notice of the fact sua sponte, and dismissed the cause. Bingham v. Cabot, 3 Dall. 382, 1 L. Ed. 646; Emory v. Greenough, 3 Dall. 369, 1 L. Ed. 640; Capron v. Van Noorden, 2 Cranch, 126, 2 L. Ed. 229; Brown v. Keene, 8 Pet. 112, 8 L. Ed. 885. The practice in such cases previous to 1875 was precisely what it has been since. That statute assumes that the complaint will on its face show a case within the cognizance of federal courts, and deals only with defects of jurisdiction which exist dehors the pleadings. Here the courts were in need of statutory aid. As already explained, such defects could be attacked at common law only by plea in abatement, and were forever waived by pleading to the merits. As a matter of practical experience, however, the fact that the court was without jurisdiction would often first appear incidentally at the trial in the production of evidence; but as there had then been a plea to the merits, it was too late by the rule of the common law to deal with the subject. The result was that the jurisdiction of the courts was frequently imposed upon; but the courts, though cognizant of the wrong, felt themselves powerless to afford a remedy without the aid of legislation. De Sobry v. Nicholson, 3 Wall. 420, 427, 18 L. Ed. 263; Farmington v. Pillsbury, 114 U. S. 138, 143, 5 Sup. Ct. 807, 29 L. Ed. 114. Section 5 of the act of 1875 was designed to reach this evil, which it was feared would be

greatly aggravated by section 1 of that act. Williams v. Nottawa, 104 U. S. 209, 26 L. Ed. 719. Its object was to release the federal courts from the rule of the common law by which all objections to jurisdiction were waived by pleading to the merits, and to enable those courts to protect themselves at all times against frauds upon their jurisdiction. It does not deal with the subject of pleading in any way, save only to provide that want of jurisdiction shall be considered "at any time." The Supreme Court in applying the act has held that the question may now be brought forward in any manner either by plea, answer, or motion; but however presented, a dismissal of the cause is not authorized until it is made to appear to the satisfaction of the court by some affirmative showing in support of the pleading, whatever its form, "that such suit does not really and substantially involve a dispute or controversy properly within the jurisdiction of said Circuit Court." The statute covers the entire field of dismissals for defects of jurisdiction arising upon the evidence, and not only declares the duty of federal courts upon that subject, but also prescribes the showing necessary to the exercise of the power which it grants. It requires proof which shall satisfy the court that the suit does not "really and substantially" come within its jurisdiction. The general denial has no place within its language which calls for affirmative proof and hence affirmative pleading. It was never intended to absolve counsel, when challenging the jurisdiction of the court, from the duty of framing their pleading, or other form of attack, so as to present the question clearly and directly as a subject of actual controversy. The right to hear the objection at any time, or in any manner, is for the protection of the court. It does not authorize a covert form of raising the issue without actually litigating it at the trial, but for the purpose of holding it in reserve as a possible basis of error in case of an unsatisfactory judgment. Such a procedure, instead of defeating fraud, would encourage it. While the court may seize upon any form of pleading for the purpose of protecting itself against frauds upon its jurisdiction, still counsel ought not to be permitted to use a mere form of pleading as a means of presenting this question for the first time in an appellate court without any actual contest of the jurisdiction in the court below. Such a practice leaves the existence or nonexistence of jurisdiction to be determined by a process of speculative inference from the pleadings, without disclosing the actual facts upon which jurisdiction depends. The present case is an impressive illustration of the results of such a practice. Here there is no proof of facts showing a want of jurisdiction, but simply a general denial combined with an informality in the evidence. Such is not the plan of the statute. It requires the production of evidence which shall bring the real facts to light. It is a grievous hardship for litigants to be led over the long course of federal justice in the belief that they are having their rights adjudicated, only to learn at the end that the entire proceeding is a nullity. Such a result should be strictly confined to the necessity which affords its only justification. Owing to the limited jurisdiction of the federal courts, such hardship cannot be avoided when the facts essential

to jurisdiction have not been brought upon the record; but when jurisdiction has once been established by proper averments in the complaint, it should remain until proof has been produced upon an actual trial of the issue that the cause is one which, in the language of the statute, "does not really and substantially involve a dispute or controversy properly within the jurisdiction of the court." Such a practice is within the fair intent of the act, and has received the approval of the federal courts.

This will appear if we now return to the propositions announced in the earlier part of this opinion. The first of these was that a proper allegation of jurisdictional facts in the complaint creates a prima facie case in favor of jurisdiction. That rule was first clearly stated in Sheppard v. Graves, 14 How. 505, at page 510, 14 L. Ed. 518, as follows:

"The true doctrine applicable to the question is this: That although in the courts of the United States it is necessary to set forth the grounds of their cognizance as courts of limited jurisdiction, yet, wherever jurisdiction shall be averred in the pleadings, in conformity with the laws creating those courts, it must be taken prima facie as existing, and that it is incumbent on him who would impeach that jurisdiction for causes dehors the pleading to allege and prove such causes; that the necessity for the allegation and the burden of sustaining it by proof both rest upon the party taking the exception."

The other doctrine announced in the same case, that the objection could only be taken by plea, has, of course, been done away with. But so far as we are aware, the rule just quoted is still the rule of the federal courts. What the defendant is attempting to do is to challenge the jurisdiction of the court, and in order to do that he must not simply deny the citizenship as alleged in the complaint, but must allege affirmatively facts showing that the plaintiff and defendant are citizens of the same state, or make such other averments as shall show directly that the cause is beyond the lawful cognizance of the court.

The latest declaration of the Supreme Court, that a proper averment showing diversity of citizenship makes out a prima facie case in favor of jurisdiction, is in Steigleder v. McQuesten, 198 U. S. 141, 25 Sup. Ct. 616, 49 L. Ed. 986, where the court says:

"The averment in the bill that the parties were citizens of different states was sufficient to make a prima facie case of jurisdiction, so far as it depended on citizenship."

The same rule is declared by the Circuit Court of Appeals of the Seventh Circuit, in Adams v. Shirk, 117 Fed. 801, 55 C. C. A. 25: "The proper allegation of jurisdictional facts prima facie was true." There the objection was raised in a common-law state by the general issue. That, however, is quite as broad a form of pleading as the general denial under the code, and would admit of any attack upon the jurisdiction of the court which would be possible under a denial in a code state. Furthermore, inasmuch as a federal statute permits the objection to be raised "at any time," it would not be waived in the national courts by pleading to the merits under the one practice any more than the other.

The fact, however, that the proper averment of the citizenship of the parties in the complaint creates a prima facie case in favor of jurisdiction becomes more manifest when we consider the second proposition, namely, that the prima facie case thus made remains until it is overcome by evidence which satisfies the mind "to a legal certainty" that jurisdiction does not in fact exist. This second proposition was also first clearly announced in Sheppard v. Graves, 14 How. 505, 14 L. Ed. 518. It was again stated in the case of Barry v. Edmunds, 116 U. S. 550–559, 6 Sup. Ct. 501, 506, 29 L. Ed. 729, where it is said, when the complaint contains proper jurisdictional allegations, the Circuit Court is not justified in dismissing a cause for want of jurisdiction—

"unless the facts, when made distinctly to appear on the record, create a legal certainty of the conclusion. Nothing less than this is meant by the statute when it provides that the failure of its jurisdiction on this account, 'shall appear to the satisfaction of said Circuit Court.'"

In that case the question arose as to the amount in controversy. The trial court, after receiving the verdict of the jury, instituted an inquiry upon that subject, and reached the conclusion that the suit really did not involve an amount sufficient to confer jurisdiction upon the court, and dismissed the cause. There was much evidence to support this conclusion, but the Supreme Court held that it was not sufficient to justify the dismissal, and reversed the cause, announcing the rule in the language above quoted.

In the case of Hartog v. Memory, 116 U. S. 588, 6 Sup. Ct. 521, 29 L. Ed. 725, the jurisdiction was based upon an allegation of diversity of citizenship. It appears from the record in the lower court (C. C.) 23 Fed. 835, that there was a general denial in the answer. In the course of the trial there was evidence tending to show that both parties were aliens, and the trial court for that reason, on motion of the defendant after verdict, dismissed the cause for want of jurisdiction. After referring to the statute of 1875, and the causes which led to its enactment, the Supreme Court says (page 590 of 116 U. S., page 522 of 6 Sup. Ct. [29 L. Ed. 725]):

"Neither party has the right, however, without pleading at the proper time and in the proper way, to introduce evidence the only purpose of which is to make out a case for dismissal. The parties cannot call on the court to go behind the averments of citizenship in the record except by a plea to the jurisdiction or some other appropriate form of proceeding. The case is not to be tried by the parties as if there was a plea to the jurisdiction when no such plea has been filed. The evidence must be directed to the issues, and it is only when the facts material to the issues show there is no jurisdiction that the court can dismiss the case upon the motion of either party."

In this case there was a general denial, and the evidence also tended strongly to show that the proper diversity of citizenship did not exist. But the Supreme Court ruled that notwithstanding that showing, and notwithstanding a motion made in the trial court challenging its jurisdiction, still the trial court could not dismiss the cause for want of jurisdiction because the plaintiff had had no opportunity, after the question was directly raised, to meet that issue. The present case is much stronger than the Hartog Case for sustaining the

judgment. Here such evidence as was adduced tended to support the allegations of the complaint as to the citizenship of the parties. Here no motion challenging the jurisdiction was made in the trial court, as was done in that case; but we are now asked, upon attention being called for the first time to the inaccuracy of the evidence, to reverse the judgment for want of jurisdiction. That would be to go directly in opposition to the case of Hartog v. Memory, for there the Supreme Court, though the issue in the pleadings was the same as here, reversed the action of the trial court in dismissing the case, without giving to the plaintiff an opportunity to show that evidence, which on its face affirmatively established a want of jurisdiction, was in fact not true.

The case of Hartog v. Memory is an unqualified holding that any lack of evidence to support the jurisdictional averments of the complaint must be challenged in the trial court, and cannot be raised for the first time on appeal; and it further holds that, in order to justify a dismissal by the trial court for want of jurisdiction, the evidence material to that subject must show directly and affirmatively that there is no jurisdiction. This case has never been overruled; nor has it been in any way qualified except as we shall presently point out. On the contrary, it has been referred to as a controlling authority as frequently as any decision of the Supreme Court dealing with the subject of jurisdiction. The following are only the more important cases in which it has been thus cited: Morris v. Gilmer, 129 U. S. 315, 9 Sup. Ct. 289, 32 L. Ed. 690; Wetmore v. Rymer, 169 U. S. 115, 18 Sup. Ct. 293, 42 L. Ed. 682; Huntington v. Laidley, 176 U. S. 668, 20 Sup. Ct. 526, 44 L. Ed. 630; Imperial Refining Co. v. Wyman (C. C.) 38 Fed. 574, 576, 577, 3 L. R. A. 503; Hewitt v. Story (C. C.) 39 Fed. 158–160; Foster v. Cleveland, C., C. & St. L. Ry. Co. (C. C.) 56 Fed. 434–436; Gubbins v. Laughtenschlager (C. C.) 75 Fed. 615, 620; National Masonic Accident Association v. Sparks, 83 Fed. 225, 227, 28 C. C. A. 399; Terry v. Davy, 107 Fed. 50, 52, 46 C. C. A. 141; Adams v. Shirk, 117 Fed. 801, 804, 55 C. C. A. 25; Pennsylvania Company v. Bay (C. C.) 138 Fed. 203–205; Every Evening Printing Co. v. Butler, 144 Fed. 916, 918, 75 C. C. A. 657; Briggs v. Traders' Co. (C. C.) 145 Fed. 254, 257; Kirven v. Virginia-Carolina Chemical Co., 145 Fed. 288–291, 76 C. C. A. 172; Gaddie v. Mann (C. C.) 147 Fed. 955, 959; Acord v. Western Pocahontas Corporation (C. C.) 156 Fed. 989; Crosby v. Cuba Railroad Co. (C. C.) 158 Fed. 144.

In the case of Morris v. Gilmer, 129 U. S. 315, 9 Sup. Ct. 289, 32 L. Ed. 690, Hartog v. Memory is reviewed, and some of the general language there used is said to have been irrelevant to the question before the court, and the decision is qualified to the extent of allowing a jurisdictional objection to be raised by any form of pleading. The substantial ground, however, of the decision in Hartog v. Memory is not questioned but reaffirmed. At page 325 of 129 U. S., page 292 of 9 Sup. Ct. (32 L. Ed. 690), Mr. Justice Harlan, referring to the evidence necessary to support a dismissal for want of jurisdiction under the act of 1875, says:

"It is true that by the words of the statute this duty arose only when it appeared to the satisfaction of the court that the suit was not one within its jurisdiction."

And again, at page 326 of 129 U. S., page 292 of 9 Sup. Ct. (32 L. Ed. 690):

"But the above rule is equally applicable in a case in which the averment as to citizenship is sufficient, and such averment is shown in some appropriate mode to be untrue."

And again, on the same page:

"And the statute does not prescribe any particular mode in which such fact may be brought to the attention of the court. It may be done by affidavits, or depositions taken in the cause may be used for that purpose. However done, it should be upon due notice to the parties to be affected by the dismissal."

If it was error in the trial court in the Hartog Case, where the evidence upon the record affirmatively showed a lack of jurisdiction, to dismiss without giving the plaintiff an opportunity to rebut that evidence, surely here, where the evidence upon the record tends to support the averments of the complaint, and no question as to the sufficiency of that evidence was in any way raised in the trial court, it would be a pernicious practice for this court to set the judgment aside upon its attention being called to an informality in the evidence.

In Deputron v. Young, 134 U. S. 241, 10 Sup. Ct. 539, 33 L. Ed. 923, after verdict a petition was filed by the defendant in which he alleged that the plaintiff, Young, was not the real party in interest, and that the title to the property in controversy had been collusively transferred to her for the sole purpose of vesting apparent jurisdiction in the federal court. To this petition an answer was interposed, and a trial had which resulted in a denial of the application. Speaking of the proof required by section 5 of the act of 1875, the court says, at page 252 of 134 U. S., page 541 of 10 Sup. Ct. (33 L. Ed. 923):

"In Barry v. Edmunds, 116 U. S. 550, 6 Sup. Ct. 501, 29 L. Ed. 729, it was held that a suit cannot properly be dismissed by a Circuit Court of the United States, as not involving a controversy within the jurisdiction of the court, unless the facts when made to appear on the record create a legal certainty of that conclusion. 'Nothing less than this,' said Mr. Justice Matthews, 'is meant by the statute when it provides that the failure of its jurisdiction, on this account, shall appear to the satisfaction of said Circuit Court.'"

In Mexican Central Railway Company v. Pinkney, 149 U. S. 194, 13 Sup. Ct. 859, 37 L. Ed. 699, jurisdiction was rested upon diversity of citizenship which was properly pleaded in the complaint. There was a general denial. On the trial of the cause, by cross-examination of the plaintiff, evidence was developed which tended to show that the plaintiff, instead of being a citizen of Texas, as alleged in the complaint, was in fact a citizen of the territory of Arizona. If this had been true, it would have divested the court of jurisdiction. The defendant asked leave to file a plea raising this question. The application was denied. So far as the record shows, there was no evidence to support the jurisdictional averments of the compliant, al-

though, as we have already stated, there was a general denial in the answer. The Supreme Court sustained the action of the trial court.

In Wetmore v. Rymer, 169 U. S. 115, 18 Sup. Ct. 293, 42 L. Ed. 682, the question again related to the sum or value in controversy. The defendant at the close of plaintiff's evidence moved to dismiss the case upon the ground that the value of the property involved had been collusively exaggerated for the purpose of conferring jurisdiction upon the court. The motion was then denied, and the cause proceeded to verdict, which was in favor of the plaintiff for only $1. Thereupon the court again entertained the motion of the defendant and dismissed the cause. The Supreme Court, after an extended review of the authorities, reversed this action of the trial court upon the following statement of the rule:

"Applying the law as heretofore stated by this court, in the cases cited, that a suit cannot be properly dismissed by a Circuit Court as not substantially involving a controversy within its jurisdiction, unless the facts, when made to appear on the record, create a legal certainty of that conclusion, we conclude that, in the present case, the want of jurisdiction was not made clear, and that the evidence before the court did not warrant a dismissal of the action for want of jurisdiction."

The same doctrine is again announced in Hunt v. N. Y. Cotton Exchange, 205 U S. 322–333, 27 Sup. Ct. 529, 51 L. Ed. 821. That was a plea to the jurisdiction on the ground that the amount involved had been collusively stated for the purpose of creating jurisdiction. The court says:

"On the issue presented by the plea, the burden of proof was upon the appellant, and he was required to establish by a preponderance of the evidence that the amount involved was less than the jurisdictional amount."

In support of this proposition Sheppard v. Graves, 14 How. 505, 14 L. Ed. 518, is cited by the court, thus clearly indicating that the rule declared in that decision, that a proper averment of jurisdictional facts creates a prima facie case and devolves the burden of rebutting it upon the defendant, was not changed either by the act of 1875 or by the conformity act.

The subject was brought under examination in this court in National Masonic Association v. Sparks, 83 Fed. 225, 28 C. C. A. 399; also by the Court of Appeals of the Third Circuit in Every Evening Printing Co. v. Butler, 144 Fed. 916, 75 C. C. A. 657. In the last case the question related to the citizenship of the parties, and was presented in the answer by the general issue. The case arose in the state of Delaware, where the common-law procedure is still in force; but, as already remarked in regard to the case of Adams v. Shirk, the plea of the general issue at common law would admit any defense which a general denial would admit under the codes; and the doctrine declared by the court is quite as applicable as it would have been if the case had arisen in a code state. There the court says:

"Even if defendant below had challenged the jurisdictional fact of diverse citizenship, as alleged in the declaration, at the proper time, by appropriate plea or notice, the burden of proving by competent evidence its own affirmative averment in that regard would have fallen upon it."

Toledo Traction Company v. Cameron, 137 Fed. 48, 69 C. C. A. 28, arose in the state of Ohio, where they have the code practice. The complaint contained proper averments showing that plaintiff and defendant were citizens of different states. There was a general denial in the answer. No proof was adduced at the trial in support of the jurisdictional averments. After verdict and judgment, the defendant, by motion, raised the objection that the court was without jurisdiction. We shall examine this case more at length hereafter. At present we simply cite the language of the Court of Appeals of the Sixth Circuit as to the evidence which is necessary to justify a dismissal for want of jurisdiction. Speaking of the action of the trial court on that subject, it is said:

"The court was acting under the authority of the act of 1875, and it is settled that it must clearly appear that the court is being imposed upon, in order to justify a dismissal of the cause; and we may add that this rule is applied with increased rigor when the presentation of the objection is long delayed, as when the case has been tried and a verdict and judgment on the merits has been reached before the attention of the court has been drawn to it; presupposing, of course, that the lack of jurisdiction is not apparent on the record. Deputron v. Young, 134 U. S. 241, 10 Sup. Ct. 539, 33 L. Ed. 923."

Surely if this is the rule when the objection is taken in the trial court, it ought to be enforced with even greater rigor when, as here, the objection is for the first time raised on appeal. In fact, such an objection ought to be conclusively barred in the appellate court, because there it is impossible to produce the evidence showing the actual citizenship of the parties.

The only cases in apparent conflict with the rules which we have been considering are Roberts v. Lewis, 144 U. S. 653, 12 Sup. Ct. 781, 36 L. Ed. 579, and a case in this circuit based wholly upon that case, Cole v. Carson, 153 Fed. 278, 82 C. C. A. 108. Roberts v. Lewis was an action of ejectment arising in the state of Nebraska, where the code practice is in force. The answer combined a plea of the statute of limitations with a general denial. At the conclusion of the evidence the jury, by direction of the court, made a special finding which disposed of all the merits of the controversy, but contained no reference to the citizenship of the parties. Upon the finding, judgment was entered in favor of the plaintiff. The Supreme Court, in reversing the judgment, uses the following language at page 658 of 144 U. S., page 783 of 12 Sup. Ct. (36 L. Ed. 579):

"The necessary consequence is that the allegation of the citizenship of the parties, being a material allegation properly made in the petition, was put in issue by the answer, and like other affirmative and material allegations made by the plaintiff and denied by the defendant, must be proved by the plaintiff."

We are unable to harmonize that language with the uniform holding of the Supreme Court, both previous to the decision in which it was employed, and since. It overlooks the cardinal fact that the jurisdictional averments of the complaint are not made as a basis of proof at the trial, but to establish the jurisdiction of the court over the action at its commencement. It is no doubt true that the Supreme Court, in order to give full effect to the act of 1875, has permitted the question of jurisdiction to be raised in any way that will bring

the subject to the attention of the court, and it is possible that even a general denial would be held sufficient to support affirmative evidence adduced upon the hearing to show that the real citizenship of the parties is such as to destroy jurisdiction. But the statement that the plaintiff must prove the jurisdictional averments of his complaint, when they are simply challenged by a general denial, overlooks the purpose of the jurisdictional averments in the pleadings, and the uniform holding of the court from the case of Sheppard v. Graves, 14 How. 505, 14 L. Ed. 518, down to Steigleder v. McQuesten, 198 U. S. 141, 25 Sup. Ct. 616, 49 L. Ed. 986, that a proper statement of jurisdictional facts in the complaint makes out a prima facie case in favor of jurisdiction; and the other doctrine, also stated in Sheppard v. Graves, and frequently reaffirmed, down to as late as Hunt v. New York Cotton Exchange, 205 U. S. 322, 27 Sup. Ct. 529, 51 L. Ed. 821, that such prima facie case remains and sustains jurisdiction until it is overcome by evidence showing a want of jurisdiction to a "legal certainty." The case of Roberts v. Lewis may possibly be explained upon the ground that the finding of the jury in the trial court would not support a judgment because it failed to dispose of all the issues raised by the pleadings. Such a ruling would have been in accord with many earlier decisions of the court. In Patterson v. United States, 2 Wheat. 221, 4 L. Ed. 224, it was said:

"A verdict is bad if it varies from the issue in a substantial manner, or if it finds only a part of that which is in issue. Although the court in which the cause is tried may give form to a general finding, so as to make it harmonize with the issue, yet, if it appears to that court, or to the appellate court, that the finding is different from the issue, or is confined to a part only of the matter in issue, no judgment can be rendered upon the verdict."

The same rule was again enforced by the court speaking by Chief Justice Marshall in Barnes v. Williams, 11 Wheat. 415, 6 L. Ed. 508:

"Where in a special verdict the essential facts are not distinctly found by the jury, although there is sufficient evidence to establish them, this court will not render judgment upon such an imperfect special verdict, but will remand the case to the court below with directions to award a venire facias de novo."

The subject came again before the court in Hodges v. Easton, 106 U. S. 408, 1 Sup. Ct. 307, 27 L. Ed. 169, where it is declared that a special verdict which fails to find the facts upon all the material issues raised by the pleadings will not support a judgment, although it is recited in the judgment that it is based upon a special verdict of the jury, "and facts conceded or not disputed upon the trial."

This was possibly the ground of decision in Roberts v. Lewis, for the opinion at its conclusion speaks of there being no "finding upon this essential point." Such an explanation of the case is suggested in Toledo Traction Company v. Cameron, 137 Fed. 49, 53, 69 C. C. A. 28.

Wells Co. v. Gastonia Co., 198 U. S. 177, 25 Sup. Ct. 640, 49 L. Ed. 1003, is not in point, because there the issue related not to the domicile, but to the corporate existence, of the plaintiff. Such a defense may properly be presented under a general denial, or the form of answer employed in that case. It is also true that the evi-

dence was there fully presented, and the question was not left to a speculative inference from the pleadings.

Two objections might be interposed to the cases we have cited: (1) It might be urged that Hartog v. Memory, 116 U. S. 588, 6 Sup. Ct. 521, 29 L. Ed. 725, Adams v. Shirk, 117 Fed. 801, 55 C. C. A. 25, and Every Evening Printing Company v. Butler, 144 Fed. 916, 75 C. C. A. 657, arose in states having the common-law practice, and that for this reason, under the conformity act, the federal courts in those cases were controlled by the common-law rule that objections to the jurisdiction must be taken by plea in abatement. We are not dealing, however, with the conformity act, but with section 5 of the act of 1875. By that statute the rule of the common law as to the manner of raising objections to the jurisdiction of the court is abrogated. It is a federal statute, and is binding upon the federal courts regardless of local practice. The rule of the common law related to the order of defenses, and required those relating to jurisdiction to be first and separately taken. The act of 1875 provides that such objections may be taken "at any time," and, as that statute has been interpreted by the Supreme Court, they may also be taken in any manner. Here, then, we have the rule of practice for all federal courts abrogating the rule of the common law in regard to pleas in abatement. That rule being abrogated, objections to the jurisdiction may be taken in states having the common-law practice under the general issue, if it may be taken in code states under the general denial. The cases referred to are therefore as much in point as they would have been if they had arisen in states having the code practice. (2) It might be contended that Barry v. Edmunds, 116 U. S. 550, 6 Sup. Ct. 501, 29 L. Ed. 729, Wetmore v. Rymer, 169 U. S. 115, 18 Sup. Ct. 293, 42 L. Ed. 682, and Hunt v. Cotton Exchange, 205 U. S. 322, 27 Sup. Ct. 529, 51 L. Ed. 821, turned not upon the citizenship of the parties, but upon whether the amount involved was sufficient to confer federal jurisdiction, and that from this circumstance these cases belong in a class by themselves. To such a contention there are several answers: (a) Though the feature is obvious, the opinions make no reference to it as a ground of decision. On the contrary, they lay down a general rule which clearly embraces all objections to jurisdiction. (b) They turn not upon the circumstance referred to, but upon a construction of section 5 of the act of 1875. They declare the meaning of the phrase in that statute, "shall appear to the satisfaction of said Circuit Court," and say that that language requires proof of the want of jurisdiction to a legal certainty. (c) The statute itself makes no such classification as this objection suggests. It deals with all objections to the jurisdiction of the court which do not appear on the face of the pleadings but do appear by evidence, and requires that such objections, whether based on the citizenship of the parties or the amount in controversy, shall be established by the party raising them "to the satisfaction of the Circuit Court." (d) Jurisdictional objections depending upon the amount in controversy are necessarily involved in the merits of the cause. For this reason they are sure not to be overlooked at the trial, while objections arising

out of the citizenship of the parties do not involve the merits and are thus likely to escape attention. This distinction, therefore, instead of lessening the duty of the defendant, ought to impose upon him the burden of more direct pleading and more certain proof.

But if we turn aside from this discussion of authorities and ask ourselves the central question, which practice will best promote justice? the answer is so plain as to make the discussion itself seem almost a reproach to the law. The practice here advocated simply requires that frankness toward opposing counsel and that candor towards the court which at the present time is fundamental to the procedure of all English-speaking communities. It imposes no burden except that of raising an objection directly and clearly in the court where it can be met with the least trouble to courts and the least expense to litigants. The other practice, on the contrary, authorizes clandestine pleading and captious practice; the keeping of an objection in ambush for the purpose of speculating upon the result of the trial, and then, if that result is unfavorable, bringing the objection forward for the first time in an appellate court, where it will result in the greatest loss of time to the courts themselves, and the greatest expense to the litigants, and make a mockery of justice in the judgment of all men outside of the legal profession.

Under the doctrine which we have thus considered, at perhaps too great length, the question of jurisdiction ought to be ruled against the plaintiffs in error. The allegations of citizenship in the complaint satisfy the most exact standards, and there has been no affirmative showing to overcome the prima facie case which they create.

The same result might be reached upon narrower grounds. This cause was tried by the court without a jury, and a general finding made in favor of the plaintiff. It has been repeatedly held by the Supreme Court that an appellate court cannot in such a case look into the evidence for the purpose of deciding whether it supports the finding. If a bill of exceptions is preserved embodying the testimony and the rulings of the court on the trial of the case, the appellant court can only look into such bills of exceptions for the purpose of deciding whether the lower court committed error in the course of the trial in its rulings upon questions of evidence and other like matters. Viewing the general denial of the answer in the most favorable light possible for the defendant, it presented the citizenship of the plaintiff as one of the issues in the cause for the decision of the trial court. That court by its general finding has found this issue, as well as those relating to the merits, in favor of the plaintiff. Under the rulings of the Supreme Court in the following cases, we are not at liberty to look into the record for the purpose of determining that such finding was not supported by the evidence as to every issue. Norris v. Jackson, 76 U. S. 125, 19 L. Ed. 608; Insurance Company v. Folsom, 85 U. S. 249, 21 L. Ed. 827; Lehnen v. Dickson, 148 U. S. 71, 13 Sup. Ct. 481, 37 L. Ed. 373. See, also, U. S. Fidelity Co. v. Board of Commissioners, 145 Fed. 144, and cases cited on page 151, 76 C. C A. 114.

It is urged that it is the duty of the court to look into all parts of the record for the purpose of discovering a want of jurisdiction.

We do not question the rule that when the complaint fails to allege the facts necessary to federal jurisdiction, or when it appears from the evidence that the cause is in fact outside of federal cognizance, it is the duty of all courts to take notice of the fact; but when jurisdiction is properly laid in the complaint, no court is authorized to dismiss the cause for want of jurisdiction upon a mere insufficiency of proof on that subject. In fact, the Supreme Court has held such action improper, even when on the face of the record there was affirmative proof of a lack of jurisdiction, combined with a general denial in the answer. To justify a dismissal, that court ruled that the question must be directly raised in the trial court, and opposing counsel given an opportunity to rebut the evidence showing that the court was without jurisdiction. Hartog v. Memory, 116 U. S. 588, 6 Sup. Ct. 521, 29 L. Ed. 725; Morris v. Gilmer, 129 U. S. 315, 9 Sup. Ct. 289, 32 L. Ed. 690. See, also, Mexican Cen. R. R. Co. v. Pinkney, 149 U. S. 194, 13 Sup. Ct. 859, 37 L. Ed. 699. Here the jurisdictional facts are properly alleged in the complaint, and there is no showing in the evidence which can create even a suspicion of fraud upon the jurisdiction of the court, and the objection is raised in an appellate court by a defeated party who presented the issue obscurely under a general denial and refrained from directly raising the question in the trial while he speculated upon the result of the litigation. Under such circumstances, surely, this court is not justified in reversing the judgment when there is a general finding supporting jurisdiction.

If, however, the foregoing limitation be waived and we examine the evidence, it is sufficient to support the finding that plaintiff at the commencement of the action was a citizen of Illinois. He was asked, while testifying as a witness, where he resided, and stated that he lived at Vandalia, in that state. The record also shows that he was engaged in business there, having an extensive manufacturing establishment at Golden Gate, which he had been conducting for at least five years. The long correspondence which is embodied in the record is also addressed to him at such place of business. This is the showing on the subject of plaintiff's citizenship. While it is not technically precise and certain, it is sufficient to support jurisdiction.

Toledo Traction Company v. Cameron, 137 Fed. 48, 69 C. C. A. 28, is instructive not only as to the particular matter now under consideration, but as to all features of the present case. The complaint there contained a proper allegation of diversity of citizenship. A general denial was embodied in the answer. The case was tried before a jury. No evidence was adduced as to the citizenship of either of the parties. At the conclusion of the testimony a motion was made by the defendant for a directed verdict in its favor. This was overruled, and the cause submitted to the jury, who returned a verdict in favor of the plaintiff upon which judgment was entered. Thereafter the defendant moved that the verdict and judgment be set aside, and for a new trial, and upon the hearing of that motion urged for the first time that no evidence had been offered by plaintiff at the trial to prove the citizenship of the parties. Thereupon the court set aside the judg-

ment and permitted the plaintiff and defendant to adduce evidence upon that subject. The plaintiff was a minor, two years of age, living with his mother. The mother had obtained a divorce in Ohio, in which she was awarded the custody of the plaintiff. On the trial before the court as to the question of jurisdiction, she testified that after the divorce was obtained "she went to Monroe, in the state of Michigan, to accept a position which had been offered her there; that she took the plaintiff with her, and that she and the plaintiff had lived in that state ever since; that during that time she took care of the plaintiff, keeping him with her." In the complaint the plaintiff was alleged to be a citizen of Michigan. No evidence was offered as to whether the mother's residence in Michigan was temporary, for the purposes of her employment only, or permanent; nor was there any testimony as to whether she was a citizen of that state or not, except the evidence just stated. The corporation defendant was a citizen of the state of Ohio. Upon this evidence the court found that at the commencement of the suit the plaintiff was a citizen of the state of Michigan, and reinstated the judgment. This action of the trial court constituted the error brought before the Circuit Court of Appeals for review. It will therefore be seen that this case was even a stronger one for dismissal than the present case, for the question was directly challenged before the trial court, and not only the deficiency of proof on the original trial, but also on the hearing before the court as to the citizenship of the parties, was urged by the defendant in the trial court. The evidence was certainly less strong than it is here. It consisted simply of the statement that the plaintiff was taken by his mother, who was his guardian, into the state of Michigan, by reason of the mother's employment there. No evidence whatever was adduced as to the permanency of the residence in Michigan, or of the mother's citizenship in that state. The action of the trial court, however, was sustained, and the judgment affirmed.

In Adams v. Shirk, 117 Fed. 801, 55 C. C. A. 25, there were proper averments in the complaint showing that the plaintiff was a citizen of Indiana, and the defendant a citizen of Illinois. To this complaint there was an answer setting up the general issue. Upon this issue the residence of the plaintiff below, the defendant in error, Shirk, became one of the controverted questions on the trial. It was urged upon appeal that under the general denial the plaintiff below had the burden of showing that at the time of the commencement of the action he was a citizen of the state of Indiana. On this subject the court says:

"The question is not, as plaintiff in error contends, whether the defendants in error have discharged the burden of proving that Elbert W. Shirk was a citizen of Indiana. The proper allegation of jurisdictional facts, prima facie, was true. Simply to deny that Elbert W. Shirk was a citizen of Indiana would not show a want of jurisdiction. He may have been a citizen of some other state than Illinois, whereof plaintiff in error was a citizen. That Elbert W. Shirk was a citizen of Illinois was a material and necessary allegation. It was an affirmative averment, the burden of proving which, even under a proper plea in abatement, would have fallen on the plaintiff in error. Under the plea in the present case, the office of which was no broader than a motion or a suggestion to the court to protect itself from imposition,

the burden most assuredly was upon the moving party. The plaintiff in error introduced no evidence on the subject. The evidence of defendants in error does not establish that Elbert W. Shirk was a citizen of Illinois, and that the Circuit Court was imposed upon."

Here, however, there was strong affirmative proof tending to show that Shirk was a citizen of the same state as Adams, and the question was directly raised in the trial court. If that showing was insufficient to justify the court in dismissing the cause for want of jurisdiction, surely here, where the affirmative evidence tends to support the jurisdictional averments of the complaint, there is no just ground for such action.

The only other decision to which we shall call attention on this branch of the case is Sun Printing & Publishing Association v. Edwards, 194 U. S. 377, 24 Sup. Ct. 696, 48 L. Ed. 1027. There the complaint alleged that "plaintiff is a resident of the state of Delaware." This, by the uniform holding of federal courts, was insufficient to support jurisdiction. The averment was admitted in the answer. On the trial the plaintiff testified:

"Just prior to my going to work upon the New York Sun, I was the publisher and business manager of the Evening Journal at Wilmington, Del., and president of the company. After my discharge by the Sun, I finally secured a place with the New Haven Paladium, and I was there a while. One of the reasons I left the New Haven Paladium was that it was too far away from home. I lived in Delware, and I had to go back and forth. My family were over in Delaware."

The averment of the complaint, and this testimony of the plaintiff, constituted all the evidence there was in the record as to his citizenship. It nowhere directly rises above the proof of his residence. But the Supreme Court held that, taking the averment and evidence together, they justified the inference that he was a citizen of Delaware, and sustained the federal jurisdiction. It will be observed that the showing here was less strong than in the present case, because there was no direct allegation of the plaintiff's citizenship in the complaint, as there is here. The evidence in that case as to plaintiff's residence seems hardly more persuasive on the subject of citizenship than the evidence in the present case. The cases are alike in the fact that the jurisdiction of the Circuit Court was not questioned in the Sun Printing Company Case by the defendant in the court below; but that question was there clearly open in the appellate court, because the complaint itself only alleged residence, and hence failed to make a prima facie showing of jurisdiction. It is manifest that there is no consideration for the dismissal of the present case which was not there present, and that in this case the clear and direct averment of the plaintiff's citizenship in the complaint makes at least one feature in favor of sustaining jurisdiction which did not exist in that case.

In whatever aspect, therefore, the question is viewed, we think the jurisdiction of the trial court should be sustained.

There is an error, however, assigned as to the rejection of certain evidence which is well taken. One of the defenses set up in the answer was that the defendant gave to the plaintiff, in the latter part of August, specific directions in writing to bill certain cars to New

York over the Delaware, Lackawanna & Western Railway, and explained that the purpose of the direction was to divert the shipment to Buffalo, if market conditions should be more favorable there. The plaintiff shipped two cars upon this order, but accepted bills of lading, routing them over other lines than the one specified. It is alleged in the answer that as a consequence the cars were delayed and lost for a period of two months, and that the defendants were injured in the total sum of $724.79. The plaintiff claimed that the Southern Railway Company, the only line at Golden Gate, Ill., where his mill was located, refused to obey his directions to route the cars over the Lackawanna Line; that he gave specific instructions on the subject, and did all in his power to comply with the order of the defendants. Evidence was adduced on these subjects by the plaintiff tending to show that it was impossible for him to comply with the directions of the defendants in the particular mentioned. The defendant, to support this issue on its part, called an agent of the Lackawanna Line, and asked him whether it was possible at the time in question "to route cars of staves from Golden Gate, Ill., to New York, via the Lackawanna Line." This evidence was excluded, and all other evidence of a similar character, and exception taken to the ruling of the court. We think the evidence was material and competent. The defendant was not concluded by the evidence of the plaintiff as to his efforts to obtain the desired routing from the agent of the Southern Railway Company. If it had been shown, as the defendant offered to show, that it was possible at the time in question to ship freight in the manner desired, and that freight was so shipped, this testimony would have gone directly to rebut the statements of the plaintiff that he endeavored to secure the routing desired for these cars. That such shipments could be made, and were made, would be very persuasive evidence that the plaintiff did not try to make them on the occasions in question. It may be true, as the trial judge suggested, that under the decision of the Supreme Court in Southern Pacific Company v. Interstate Commerce Commission, 200 U. S. 536; 26 Sup. Ct. 330, 50 L. Ed. 585, the Southern Pacific Company in the present case had the legal right to choose the eastern line over which it would make a joint shipment to New York, and to refuse to make the shipment over a line selected by the shipper. But here it was not a question whether that company had the legal right to make such a selection, but whether it was willing to conform to the plaintiff's request. We are the more willing to sustain this exception because in our judgment the plaintiff had no right to depart from defendant's instructions without presenting the subject to them anew and obtaining their consent. This error, however, is entirely independent of the other issues in the case, and could not in any view have damaged the defendants beyond the amount of $724.79 and interest at 6 per cent. from February 23, 1905, to the date of the judgment.

It will therefore be ordered that, unless plaintiff remits this amount from his judgment, the judgment be set aside, and a new trial granted. In case the terms stated are accepted, the judgment as reduced will be affirmed, without costs to either party in this court.

SANBORN, Circuit Judge, concurs in the result on the ground that, inasmuch as no request or motion was made at the close of the trial that the court should hold and declare as a matter of law that there was no substantial evidence to sustain the jurisdictional averments of the complaint and that it should dismiss the action on that account, that question is not open for consideration in this court, and on the further ground that, if it were open, there was sufficient proof to sustain the jurisdictional allegations.

HOOK, Circuit Judge (dissenting). I am unable to concur in the foregoing opinion, and feel it my duty to point out wherein I think it has departed from decisions of the Supreme Court and from what I have deemed to be the settled doctrine in this circuit. Reduced to brief terms, the opinion denies the authority of Roberts v. Lewis, 144 U. S. 653, 12 Sup. Ct. 781, 36 L. Ed. 579; holds that an averment of diverse citizenship in a complaint, though denied in the answer, makes a prima facie case in favor of jurisdiction of a Circuit Court of the United States, and casts upon the defendant the burden of sustaining his denial by proof to a legal certainty, although the state procedure, adopted by the conformity act of 1872, is otherwise; and applies the rule of Norris v. Jackson, 76 U. S. 125, 19 L. Ed. 608, to a case involving the existence of facts upon which the jurisdiction of a Circuit Court of the United States depends. In other words, it is held that when the trial is by the court without a jury, and there is a general finding and judgment for plaintiff, an appellate court cannot, in the absence of special findings or requests therefor or for declarations of law, look into the bill of exceptions to examine the evidence on an issue made by the pleadings as to diversity of citizenship upon which jurisdiction depends.

The opinion of the Supreme Court in Roberts v. Lewis is plain and concise. There is no doubt about what was held. It was averred in the petition in an action in ejectment in the Circuit Court for the District of Nebraska that plaintiff was a citizen of Wisconsin and defendant a citizen of Nebraska. The answer contained a specific defense to the merits, and also a general denial. The jury returned a special verdict covering the merits, but made no finding as to the citizenship of the parties. Under the Nebraska Code of Civil Procedure a general denial in an answer puts in issue averments of jurisdictional facts in a petition. On this the Supreme Court held that, as long as rules of pleading in courts of the United States remained as at common law, the requisite citizenship of the parties, if duly alleged in the petition, could only be denied by a plea in abatement and was admitted by pleading to the merits, but that since the conformity act all defenses are open to a defendant in a Circuit Court of the United States under any form of pleading that would be available under a like pleading in the courts of the state in which the Circuit Court is held. Mr. Justice Gray, who spoke for the court, said:

"The necessary consequence is that the allegation of the citizenship of the parties, being a material allegation properly made in the petition, was put in issue by the answer, and, like other affirmative and material allegations made

by the plaintiff and denied by the defendant, must be proved by the plaintiff. The record showing no proof or finding upon this essential point, on which the jurisdiction of the Circuit Court depended, the judgment must be reversed, with costs, for want of jurisdiction in the Circuit Court, and the case remanded," etc.

I can find no indication that the Supreme Court has ceased to regard this case with approval. On the contrary, it was cited and the above doctrine again announced as late as Wells Company v. Mfg. Co., 198 U. S. 177, 182, 25 Sup. Ct. 640, 49 L. Ed. 1003. It was also cited in Southern Pacific v. Denton, 146 U. S. 202, 209, 13 Sup. Ct. 44, 36 L. Ed. 942, Mexican Central v. Pinkney, 149 U. S. 194, 206, 13 Sup. Ct. 859, 37 L. Ed. 699, and Mattingly v Railroad, 158 U. S. 53, 57, 15 Sup. Ct. 725, 39 L. Ed. 894. Moreover, this court has twice followed and applied it in cases which arose, as the case now before us did, in Missouri, and involved the practice act of that state. Yocum v. Parker, 66 C. C. A. 80, 130 Fed. 770; Cole v. Carson, 82 C. C. A. 408, 153 Fed. 278. Roberts v. Lewis was also followed by the Court of Appeals of the Sixth Circuit in a case where it became necessary to apply the Kentucky Code—Roberts v. Langenbach, 56 C. C. A. 253, 119 Fed. 349; and again by the same court in Toledo Traction Co. v. Cameron, 69 C. C. A. 28, 137 Fed. 48, where the Ohio Code was applied.

Does an averment of diverse citizenship in a complaint in an action at law make a prima facie case in favor of jurisdiction, though it is properly denied in defendant's pleading according to the provisions of the local procedure? Does it cast upon defendant, who has duly taken issue upon it, the burden of disproving it to a legal certainty? We must bear in mind that in Missouri, where the case at bar arose, there is a modern Code of Civil Procedure under which a general denial in an answer puts in issue averments of jurisdictional facts in the complaint. An affirmative answer to the above questions would seem to violate all settled rules of code pleading and practice. It would certainly not accord with those prevailing in this circuit. In Roberts v. Lewis, supra, the court said that plaintiff's averment of citizenship, denied by defendant in his answer, "must be proved by the plaintiff." In Wells Company v. Mfg. Co., 198 U. S. 177, 182, 25 Sup. Ct. 640, 49 L. Ed. 1003, the plaintiff, to invoke the jurisdiction of the Circuit Court, averred, among other things, that it was a corporation of Mississippi. The defendant denied the averment upon information and belief. The Supreme Court, speaking by Mr. Justice Harlan, held the denial sufficient to raise the issue, and said that:

"As the jurisdiction of the courts of the United States must always appear affirmatively, of record, it became necessary, under existing statutes and under the rules of practice and pleading in North Carolina (where the action was brought), for the plaintiff to prove that it was a corporation of Mississippi."

In Cole v. Carson, supra, the unanimous view of the three Circuit Judges of this circuit who sat in the case was that, following the conformity act and the Missouri Code of Civil Procedure, a general denial put in issue an averment of diverse citizenship in the petition, and

as "no proof was produced tending to establish the affirmative of the issue so tendered," the jurisdiction of the Circuit Court had not been shown. A similar conclusion was reached by us in Yocum v. Parker, supra.

Various reasons are assigned for disregarding these decisions:

(1) The policy of the law permitting the commingling in an answer of an issue upon a jurisdictional fact with issues upon the merits is doubted. As to this I will only say that since the conformity act the practice, where it accords with that of the state, is upheld without question by what I think is an unvarying line of decisions of the federal courts; and, further, that it is a feature of practically every modern reformed code of civil procedure.

(2) Sheppard v. Graves, 14 How. 505, 14 L. Ed. 518. As much reliance is placed on this case, which arose before the passage of the conformity act, it is well to observe closely what was decided. Defendants interposed a plea in abatement, attacking an averment of plaintiff's citizenship and therefore the jurisdiction of the trial court. They also filed an answer containing a general denial and a declaration that they did not waive their plea. The trial court struck out the plea, and ruled that plaintiff was not required to prove his averment of citizenship. The Supreme Court affirmed the action of the court below, and held: First, that a general denial made no issue on a jurisdictional fact, and that the practice was governed by the "time-tested rules of the common law." "Again," the court said, "by one of those rules, believed to be without an exception, it is ordained that objections to the jurisdiction of the court, or to the competency of the parties, are matters pleadable in abatement only, and that if, after such matters relied on, a defense be interposed in bar and going to the merits of controversy, the grounds alleged in abatement become thereby immaterial, and are waived." So the plea to the jurisdiction was held to have been waived by the answer to the merits and to have been properly stricken out. And, second, that when jurisdiction is averred in plaintiff's pleading it must be taken prima facie as existing, and, if defendant would impeach it for causes dehors the pleading, the burden is on him both to allege and prove such causes. Now it is said that the first doctrine is done away with (by the conformity act and the state codes where they exist), but that the second still obtains. I think, however, it is altogether clear from a reading of the opinion of the Supreme Court that the second was considered as following from and depending upon the first. This would naturally be so, for at common law a plea to the jurisdiction founded on facts outside the record did not prove itself or disprove averments in the petition; the burden of proof was on him who interposed the plea. Moreover, in that case the plea had been stricken out as having been waived, and as the court said that the general denial in the answer did not, under the common law, put in issue plaintiff's averment of his citizenship, the case stood solely upon that averment, and it was necessarily held to be prima facie true. This case does not seem to me to afford a substantial basis for holding that, upon an issue of fact as to the citizenship of a party properly raised by answer

in accordance with the conformity act and the state practice, plaintiff's averment remains prima facie true, and the burden of proving it to a legal certainty is on defendant.

(3) Again, reliance is placed on an observation in Steigleder v. McQuesten, 198 U. S. 141, 25 Sup. Ct. 616, 49 L. Ed. 986, that "the averment in the bill that the parties were citizens of different states was sufficient to make a prima facie case of jurisdiction so far as it depended on citizenship." But this was said with reference to the particular condition of the pleadings in the case, and not with reference to the proof upon an issue. It was averred in the bill in that case that plaintiff was a citizen of the state of Massachusetts, and defendants were citizens of the state of Washington. There was no denial of this averment by the answer. After the proofs were taken, defendants moved the trial court to dismiss the cause for want of jurisdiction, because all the parties, plaintiff and defendants, were "residents" of the same state—Washington. The Supreme Court held first, that residence and citizenship were wholly different things, and therefore the motion raised no question of jurisdiction; second, but as the trial court treated the question as raised it would do likewise, and then it concluded from an examination of the evidence that plaintiff was actually a citizen of Massachusetts and was but temporarily residing in Washington. In determining these facts from the evidence, plaintiff's averment of citizenship was not referred to as having any probative effect. Mr. Justice Harlan delivered the opinion in the case, and later during the same term he delivered the opinion in Wells Company v. Mfg. Co., supra, in which it was held that a denial in an answer of plaintiff's averment of corporate citizenship put the burden on plaintiff of proving it. It is quite manifest that the observation quoted from the first opinion was not intended to put the burden of proof on a defendant who in an action at law took issue in a proper way. I may observe in passing, however, that Steigleder v. McQuesten was a suit in equity, and it may be questioned whether the conformity act requires an adjustment of equity practice in courts of the United States to that of the states, though this matter was not adverted to by the Supreme Court.

(4) Hartog v. Memory, 116 U. S. 588, 6 Sup. Ct. 621, 29 L. Ed. 725. The point of decision in this case was overruled in Morris v. Gilmer, 129 U. S. 315, 9 Sup. Ct. 289, 32 L. Ed. 690, and little was left of the case, but certain expressions in the opinion are relied on here. It appears from the statement of facts in that case that the answer contained a general denial and other defenses to the merits. The Supreme Court, in approaching the matter for decision, assumed that plaintiff's averment of citizenship was not put in issue because there was no plea in abatement. The reason for this assumption becomes apparent when it is noted that the case arose in Illinois, where common-law rules prevailed under which such a plea was the only method of tendering the issue, and a general denial or other defense on the merits amounted to a waiver of objections to the jurisdiction. It should not be inferred that the conformity act abrogated for courts of the United States the common-law procedure of a state. It merely

adopted for the Circuit and District Courts the practice and pleadings, "as near as may be," of the states in which such courts were respectively held, whether the same were according to the common law or otherwise prescribed by code. So those cases in which it appears that a general denial was set up in answer are not important here, unless they arose after the conformity act, and unless we are given to know what the state procedure was. Adams v. Shirk, 55 C. C. A. 25, 117 Fed. 801, also arose in Illinois. There the jurisdictional issue was raised by plea in abatement, and the court held that for casting the burden of proof on the plaintiff it was no more effectual than a motion or a suggestion to the court. That was so at common law.

(5) Barry v. Edmunds, 116 U. S. 550, 6 Sup. Ct. 501, 29 L. Ed. 729; Wetmore v. Rymer, 169 U. S. 115, 18 Sup. Ct. 293, 42 L. Ed. 682; Hunt v. Cotton Exchange, 205 U. S. 322, 27 Sup. Ct. 529, 51 L. Ed. 821. In these cases, and there are many like them, the question was not as to the citizenship of the parties, but whether the requisite sum or value was in controversy; and the rule is that the absence of that ground of jurisdiction must be shown to a legal certainty. It is clear, I think, that this rule is due to the peculiar character of the question involved, and it should not be confounded with that relating to citizenship, nor the limitations appropriate to one be imported into the other. It doubtless grew out of the fact that in most cases in which the existence of a dispute over a jurisdictional sum is questioned the claim of a plaintiff as set forth in his complaint is in itself one of the elements of the controversy and performs an evidential office. When it is disputed by defendant it furnishes proof of the existence of a controversy over the sum demanded. And there is obvious reason for saying that the claim of a plaintiff, not clearly fictitious on its face, but which may possibly have legal foundation, makes a case for jurisdiction until it is overthrown by proof to a legal certainty, for as long as there is any doubt or uncertainty a dispute naturally remains to be determined upon a trial of the merits. The very lack of legal certainty to the contrary shows the continued existence of controversy. In many other cases involving property or property rights there is no fixed measure of value, but it rests largely in estimate or opinion, and is difficult of accurate ascertainment. These considerations, however, do not apply to questions as to the citizenship of the parties, and hence the logic of the different rule. The one stands upon the mere existence of controversy, not how the controversy shall finally be resolved, while the other stands upon the fact of diverse citizenship, to be definitely determined when questioned.

May an appellate court look into the bill of exceptions in a case like this and examine the evidence bearing on an issue upon a jurisdictional fact, or does the failure of the trial court to make a special finding on the issue and of counsel to make requests result in sealing up that part of the record? The fifth section of the judiciary act of March 3, 1875, imposes the duty of directing a dismissal if the cause does not really and substantially involve a controversy properly within the jurisdiction of the Circuit Court. That duty is to be exercised "at any time," and, so far as it rests upon an appellate court, it cannot be effected by what the Circuit Court or the parties did or re-

frained from doing at the trial. The appellate court may and should search the entire record before it, and it is perfectly proper for counsel to direct attention in any orderly way to the supposed want of jurisdiction, though they may not have done so below. In examining the record, the court may read the evidence upon a jurisdictional issue and weigh it and decide upon its sufficiency. It is not necessary to refer to the very many cases in which the performance of this duty is held to be imperative. Nothing is better settled in federal practice. Now suppose a defendant, having joined issue in a trial court upon an averment of diverse citizenship, contends, as here, that the plaintiff failed to prove it; should the appellate court refuse to examine the evidence because defendant had not preserved his right to require it to do so, though the statute imposes the duty of examination, especially when attention is directed to a supposed want of jurisdiction? If so, there would seem to be a distinction without much practical value. When a court is searching a record to see if the cause "really and substantially" involves a controversy which gives jurisdiction, there is little reason for refusing to determine whether a jurisdictional issue raised by a defendant was properly decided. It may be that it takes a clearer case of want of jurisdiction to justify a dismissal under the act of 1875 than when a defendant merely asserts there was not sufficient evidence to determine his issue against him; but even so, the more reasonable doctrine is that such questions, however they arise, are so fundamentally important they should not be classed with those relating to the merits in which the litigants alone are interested, and the power of an appellate court to examine them should not be held to depend upon the making of special findings or the proffering of requests in the court below.

The result of the evidence in this case is debatable, and I shall not further refer to it than to say that, as an averment of residence is universally held not one of citizenship, mere proof of residence without more is not proof of citizenship.