PIKE COUNTY, PA., v. SPENCER.†

(Circuit Court of Appeals, Third Circuit. November 21, 1911.)

No. 21 (1,505).

1. COURTS (§ 280*)—JURISDICTION OF FEDERAL COURTS—PLEADING AND BURDEN OF PROOF.

An averment of the citizenship of the parties in plaintiff's pleading in a federal court, showing the requisite diversity, is sufficient, prima facie, to give the court jurisdiction; and unless put in issue by a plea to the jurisdiction or other appropriate pleading, supported by affirmative proof, or unless it appears from evidence in the record which is pertinent to issues joined that the court was without jurisdiction, an appellate court cannot be required to go behind such averment.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 816–818; Dec. Dig. § 280.*

Diverse citizenship as ground of federal jurisdiction, see notes to Shipp v. Williams, 10 C. C. A. 249; Mason v. Dullagham, 27 C. C. A. 298.]

2. CONTRACTS (§ 23*)—REQUISITES—ACCEPTANCE OF OFFER.

To constitute a contract, the acceptance of an offer must be substantially in the terms of the offer as made and without conditions.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 96–99; Dec. Dig. § 23.*]

3. SALES (§ 22*)—REQUISITES—OFFER AND ACCEPTANCE.

An offer by plaintiff to sell to defendant county a safe and certain other office fittings at prices stated was not accepted so as to create a contract by the passage by the county board of a resolution that the county make a contract with plaintiff for the purchase of the articles at the prices named in the offer, but payment to be made in installments extending over four years at a stated rate of interest.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 39–43; Dec. Dig. § 22.*]

4. COUNTIES (§ 122*)—CONTRACTS—POWERS OF COUNTY BOARD.

Two of the three members of a board of county commissioners could not bind the county by a written contract signed by themselves individually, and which varies materially in its terms from a contract relating to the same subject-matter authorized by a resolution passed by the board while in session.

[Ed. Note.—For other cases, see Counties, Dec. Dig. § 122.*]

5. COUNTIES (§ 223*)—ACTION—EVIDENCE.

Plaintiff sued defendant county for breach of a contract to purchase a safe and other office furnishings which plaintiff alleged had been made by a resolution passed by the board of county commissioners. After the passage of the resolution, plaintiff prepared a written contract which w? ͏͏ned by two of the three members of the board as individuals ᵈⁱffered in material respects from the contract propose?  ͏͏ recited that it superseded all prior agreeme·

the parties. *Held* that, while such writing was not binding on defendant as a contract, it was admissible in evidence to show that plaintiff had not accepted the contract proposed by the resolution.

[Ed. Note.—For other cases, see Counties, Dec. Dig. § 223.*]

In Error to the Circuit Court of the United States for the Middle District of Pennsylvania.

Action at law by T. E. Spencer against the County of Pike, State of Pennsylvania. Judgment (183 Fed. 894) for plaintiff, and defendant brings error. Reversed.

Samuel B. Price (Harry T. Baker and Cole B. Price, on the brief), for plaintiff in error.

William J. Fitzgerald (Wilton A. Erdman, Joseph O'Brien, and John P. Kelly, on the brief), for defendant in error.

Before GRAY and BUFFINGTON, Circuit Judges, and YOUNG, District Judge.

GRAY, Circuit Judge. An action of assumpsit was brought in the court below by Spencer, the defendant in error (hereinafter called the plaintiff), against the county of Pike, plaintiff in error (hereinafter called the defendant), to recover damages for a breach of contract. There was a verdict in favor of the plaintiff, and to the judgment on this verdict the writ of error was sued out by the defendant. A motion for judgment non obstante veredicto having been made by the defendant and refused by the court, all the evidence was certified under the Pennsylvania procedure act, and comes up with the record now before us.

The cause of action set out in the statement of claim was an alleged contract, whereby the plaintiff was to furnish to the defendant certain steel filing cases, a safe, and filled steel vestibule doors, to be used in the public offices of the county, for an aggregate sum of $4,650. The plaintiff, who described his business as that of selling safes, vaults, and filing cases, and anything else with regard to fireproof work, was not a manufacturer of the same, nor did he keep any general stock of the articles he sold on hand, or represent any particular manufacturer or firm engaged in that business. When called to testify in his own behalf, he was asked by his counsel:

"Q. Where do you live?

"A. I live wherever I hang up my hat; I have no home. I make my headquarters and get my mail by the way of the Miller Safe Company, in Baltimore, and also have headquarters at Katskee, N. Y.

"Q. In other words, you spend your time traveling on the road principally?

"A. Yes, sir.

"Q. Where do you call your home?

"A. Where I make my headquarters and stay for months at a time, and perhaps a year.

"Q. In 1909, or thereabouts, did you live in the state of New York, in Monticello, N. Y.?

"A. Yes, sir.

"Q. Your home was there at that time?

"A. Yes, sir. I was making my headquarters there at that time."

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

After this preliminary testimony, his examination in his own behalf was directed to other matters. He was not cross-examined in regard to his residence or citizenship, as bearing upon the question of jurisdiction, although the statement of claim had properly and sufficiently averred the diverse citizenship of the parties requisite to the jurisdiction of the court. The record does not disclose that any traverse of the jurisdiction was made, by plea in abatement or otherwise, or that any point was made during the trial in that respect, or that the court below had its attention called to or was required to pass upon the same. As, however, the fifteenth and last assignment of error charges that the Circuit Court erred in exercising jurisdiction in said case, on account of the evidence just quoted, and the same has been urged upon us by counsel for the plaintiff in error, we must dispose of the question of jurisdiction thus brought to our attention.

[1] Turning to the statement of claim, we find the averment that:

"The plaintiff, T. E. Spencer, is a citizen, resident and inhabitant of the state of New York. The defendant, the county of Pike, state of Pennsylvania, is a county situate in the Middle District in the state of Pennsylvania."

This constituted the requisite averment necessary under plaintiff's first pleading, to support the court's jurisdiction. It made a prima facie case, which continues until it is overcome by evidence which convinces the mind to a legal certainty that the court in fact had not jurisdiction of the action. As said by the Circuit Court of Appeals for the Eighth Circuit, in Hill et al. v. Walker, 167 Fed. 241, 92 C. C. A. 633:

"The jurisdictional averments of the complaint in federal courts are not made as a basis for proof at the trial, but to found jurisdiction of the suit. They are not held in suspense until supported by proof, like allegations respecting merits; but immediately upon the filing of the complaint, they accomplish their purpose."

A plea to the jurisdiction was always the proper and early method of procedure, and, as it is affirmative, the burden of proof rests upon the defendant. Act March 3, 1875, c. 137, § 5, 18 Stat. 472 (U. S. Comp. St. 1901, p. 511), provided that the court too could always, if at any time after such suit has been brought or removed thereto it should appear to its saisfation that such suit is not properly within the jurisdiction of said court, dismiss or remand the same. Commenting upon this act, the Supreme Court of the United States in Hartog v. Memory, 116 U. S. 588, 6 Sup. Ct. 521, 29 L. Ed. 725, speaking through Mr. Chief Justice Waite, uses this language:

"It was always settled before the act of 1875 that, when citizenship was necessary for the jurisdiction of the courts of the United States appeared upon the face of the record, evidence to contradict the record was not admissible, except under a plea in abatement in the nature of a plea to the jurisdiction, and that a plea to the merits was a waiver of such a plea to the jurisdiction. Farmington v. Pillsbury, 114 U. S. 138, 143 [5 Sup. Ct. 807, 29 L. Ed. 114], and cases there cited. In its general features this rule has not been altered by the act of 1875, but before that act was passed it had been made the rule prevented the courts from taking notice of colorable assignments or

transfers to create cases for the jurisdiction of the courts of the United States in the absence of a plea in abatement or to the jurisdiction, and, as that * * * 'opened wide the door for frauds upon the jurisdiction of the court by collusive transfers so as to make colorable parties and create cases cognizable by the courts of the United States,' we held in Williams v. Nottawa, 104 U. S. 209, 211 [26 L. Ed. 719], that the statute changed the rule so far as to allow the court at any time, without plea and without motion, to 'stop all further proceedings and dismiss the suit the moment a fraud on its jurisdiction was discovered.'

"Neither party has the right, however, without pleading at the proper time and in the proper way, to introduce evidence, the only purpose of which is to make out a case for dismissal. The parties cannot call on the court to go behind the averments of citizenship in the record, except by a plea to the jurisdiction or some other appropriate form of proceeding. The case is not to be tried by the parties as if there was a plea to the jurisdiction, when no such plea has been filed. The evidence must be directed to the issues, and it is only when facts material to the issues show there is no jurisdiction that the court can dismiss the case upon the motion of either party.

"If in the course of a trial it appears by evidence, which is admissible un-ᵗᵒʳ the pleadings and pertinent to the issues joined, that the suit does not ⁻ʰᵉᵗᵃntially involve a dispute of which the court has cognizance, ʰᵉᵉⁿ improperly or collusively made or joined for the ⁻⁻ᵒ the court may stop all further pro⁻

⁻ⁱ⁻ᵐⁱssing the suit
⁻ ⁻ⁿⁱᵣᵧ

the county commissioners remained, and a resolution was passed for the exchange of an old safe for a new one, agreeing to pay plaintiff $1,400 cash on the exchange. Subsequently, Martin Hatton, one of the three county commissioners, entered his protest on the minutes, that the action was irregular, as the meeting had adjourned. On December 21, 1908, there was another meeting of the commissioners. A motion was made and carried, as follows:

"Motion of W. H. Clune that the action of the board, of December 7, 1908, in relation to the purchase of a safe for the county treasurer's office at the price of $1,400 be rescinded, for the reason we have a proposition for the placing of steel files for the commissioners' vault, and also vault doors for commissioners' and prothonotary's office, whereby the price of the safe will be considerably reduced. Seconded by H. S. Albright, Hatton not voting.

"That we make a contract with T. E. Spencer, of Monticello, N. Y., for a safe for the treasurer's office for the price of $1,250, and steel files for the commissioners' vault $2,200, and filled vestibule doors for the commissioners' vault for the sum of $1,200. Total contract price for same being $4,650. And payments for same being as follows: $650 on delivery of material and completion of work, and one thousand dollars per year payable in December of each year with interest at the rate of 6 per cent. per annum until the same is paid. The commissioners reserve the right to pay the total amount sooner if they so desire. The contractor to pay all expenses of delivery and cartage of material. Seconded by H. S. Albright; Hatton voting no."

The case was tried by counsel for the plaintiff, on the theory that this resolution was the acceptance of an offer made by the plaintiff, counsel saying:

"I propose to prove by the witness that he made a proposition, an oral proposition, to the county commissioners, that he would furnish these things that are referred to for the prices mentioned, and that immediately after this proposition was made, or shortly after, the resolution already read by the previous witness, was passed, * * * thus showing the acceptance of a proposition which constituted a contract."

Accordingly, the plaintiff was interrogated by his own counsel, as follows:

"Q. Now you were about to tell us, when Mr. Price objected, what you said to the commissioners at that meeting. Begin all over again.

"A. I told them I would furnish them file cases for the commissioners' vault as per specifications or what we might term it, a blue print showing the dimensions running along the walls of the vault, I think on three sides and up such a height, and then I proposed to furnish them a safe for the treasurer's office of such dimensions and with the plans all drafted of such a size steel chest in it for the treasurer's money, and then the partitions all arranged for the different size books and papers, I drafted them. Before I done that I submitted to the county treasurer for his approval—

"Q. You needn't mind that.

"A. Then the vestibules, I showed the cut of what I would like to furnish them and its style of No. 3 filled vault with a fire proof filler similar to a safe door, not a sheet iron door but a filled door, and I gave them the size of it and told them how I would like to fix it up for them, how much stronger it would be and how much nicer it would look in appearance and everything. That I would do this for so and so; that is, the vault doors for such and such a price.

"Q. Tell us the price.

"A. Twelve hundred dollars, and the safe for $1,250 and the steel filing cases for $2,200, making complete $4,650.

"Q. Did you make that statement to the commissioners before this resolution was passed that Mr. Baker has read and identified here?

"A. As I remember I made it to them, if I remember right, it was in the forenoon of that day.

"Q. Were you present when the resolution was passed?

"A. Yes, sir."

He then testifies that after the meeting had adjourned that night, at which the resolution was passed, and "before we left, both Clune and Albright told me, 'Now we would like to have you rush this, as the records, the treasurer's records, are unprovided for.' " He then testifies that he sent an order to L. H. Miller Safe & Iron Works, Baltimore, for the manufacture of the vestibule and safes; that when the safe and two vestibules for the vault were manufactured, he sent the new board word, and asked when they would like to have them put in; that they answered they would not accept them, nor allow them to be put on the grounds in any way, shape or form.

On the contract alleged to have been thus made, the suit in the present case was brought.

We have above recited all the evidence disclosed by the record, touching what was alleged to be the verbal offer made by the plaintiff to the defendant at the meeting of the board of commissioners, on December 21, 1908, and as it is upon the alleged acceptance of that precise offer at this meeting, by the resolution of the board of commissioners, as appearing in the minutes of the board, regularly kept and produced in evidence, a comparison thereof with the alleged offer becomes necessary, in considering the motion for judgment non obstante veredicto, made by the defendant, and the refusal of the court to instruct the jury that, upon the whole evidence, their verdict should be for the defendant. The terms of this verbal offer depend entirely upon the testimony of the plaintiff, and as the resolution of the Pike county commissioners, which it is contended was an acceptance of the same, does not recite this offer, nor refer to it in any way, directly or indirectly, its terms, as testified to by the plaintiff, cannot be enlarged or materially varied. It is true that the resolution passed immediately preceding the one in question, recited a contract of purchase of a safe, made by the board on December 6, 1908, for $1,400, which it thereby rescinded "for the reason we have a proposition for the building of steel files for the commissioners' vault, and also filled doors for commissioners' and prothonotary's office, whereby the price of the safe will be considerably reduced." But this does not recite the offer testified to by the plaintiff, or serve to incorporate it in the succeeding resolution relied upon as an acceptance. On the contrary, it would seem to emphasize the inference deducible from the language of the resolution, that this resolution was in reality an offer to make a contract thereafter with the plaintiff, for the articles named by him in his testimony. This inference becomes unavoidable, when we consider the latter part of the resolution touching upon the important matter of the mode of payment to be stipulated for in the contract, and as to which noting at all appears in the offer testified to by the plaintiff. These stipulations are as follows:

"Total contract price for same being $4,650. And payments for same being as follows: $650 on delivery of material and completion of work, and one

thousand dollars per year, payable in December of each year, with interest at the rate of six per centum until the same is paid. The commissioners reserve the right to pay the total amount sooner, if they so desire. The contractor to pay all expenses of delivery and cartage of materials."

[2] In these very important particulars, the resolution differs from the offer testified to. The plaintiff only offers certain articles at a certain price, but is absolutely silent as to the terms on which the sale would be made, such as partial and deferred payments, the times at which they may be made, and the amounts thereof, and other minor matters mentioned in the resolution. It cannot be said that these terms of the resolution are unimportant, when they defer the final payment for a period of four years. It seems impossible not to consider this resolution as an offer to contract with the plaintiff to purchase the articles he has mentioned, if he will accede to the terms of payment suggested by the defendant. No citation of authority is necessary for the proposition that the acceptance of an offer must be of the offer substantially as made, and that no answer to an offer that is conditional or imposes upon the offerer substantial terms not embraced in his offer, can be considered as an acceptance.

[3, 4] In the case before us, the alleged offer, as testified to by the plaintiff, for the articles mentioned by him and referred to in the resolution of the Board of County Commissioners, must be taken, in the absence of anything to the contrary, as an offer of sale for cash on delivery. It is clear that the resolution of the board, considered as a response to such an offer, could not have bound the plaintiff, unless assented to by him. It is not contended that there was any express assent by the plaintiff in this case to the terms of sale imposed upon him by the resolution. Such an assent may sometimes be presumed from the conduct of the parties, but we have no ground in this case upon which such a presumption could be founded. On the contrary, the plaintiff testifies, and he is supported by the testimony of the two commissioners who voted for the resolution, that immediately after the passage of the resolution, in the room in which the board met, and before it adjourned, he drew up and had signed by these two commissioners, a paper, purporting to be a contract between them, as commissioners, and the plaintiff, in regard to the purchase and sale of the articles mentioned in the resolution. Both commissioners corroborate the plaintiff in this respect. Hatton, who voted in the negative on the resolution, was also present and protested against the signing of this paper. It is true, this paper was offered in evidence by defendant's counsel, as a subsisting contract between the county and the plaintiff, which superseded and took the place of the contract alleged to have been completed by the resolution of the board of commissioners, and as so offered was excluded by the court. This paper was read as the substance of the offer into the record, and is now before us. It is as follows:

"State of Pennsylvania, County of Pike.

"Milford, Dec. 21.

"T. E. Spencer, New York. Please send us as soon as convenient one Miller safe No. 21, with steel chest approximately inside 66 inches high, 55 inch-

es wide, 20 inches deep, two sets of No. 3 vestibules, three sets of steel cases as per plans for commissioners' office as per illustration catalogue or plan on back hereof, if any, necessary alterations allowed. Ship via —— all goods to be delivered in Milford, Pa., and rent same to undersigned on following terms, $4,650, $650 on arrival of goods, and the balance in payments of one thousand dollars each year December 1st, notes or certificates with interest given for time payments and interest payable annually on the time payments.

"It is agreed above sums are to be paid as rent for said safe. When the full amount of $4,650 and interest is paid you are to give me bill of sale of safe. If note is not forwarded to you at expiration of 25 days from date of invoice the rent shall become due at the expiration of 30 days from date of bill, and agree to accept and pay draft of amount mentioned below and are not to countermand or attempt to annul this contract.

"It is agreed that the title of said safe shall not pass until notes are paid or safe paid for in cash but shall remain your property until that time. In default of payment of said rent you or your agent may take possession and remove said safe without legal process. All claims for damages arising from such removal being hereby waived. You are to retain any payments made for use of safe. Nothing but shipment or delivery constitutes an acceptance of this contract.

"It is also hereby expressly agreed and understood that the foregoing embodies all the agreements made between us in any way hereby waiving all claims or verbal or other agreements of any nature not embodied in this contract. A receipt of a duplicate hereof is hereby acknowledged. Agents not authorized to make collections.

"Yours truly,                                                    W. H. Clune,
                                                                "H. S. Albright.

"Amount $4,650."

[5] That this paper was intended to be a complete contract in itself, with relation to the subject-matter of the resolution of the board of commissioners, of December 21, 1908, is consistent with the testimony of the plaintiff, to the effect that that night, after the meeting had adjourned, the conversation occurred with Clune and Albright, the members who had signed this paper, in which they said, "Now we would like to have you rush this," etc. That it was not a contract binding on either party, we agree with the learned judge of the court below. The two commissioners, in their individual names, could not make a contract for the county, especially one that varied so materially from the resolution passed by the board, and for which they had voted. There can be no doubt, however, that the two commissioners and the plaintiff believed that this paper thus signed by them was a binding contract between the plaintiff and the defendant, and that when the plaintiff, some months afterwards, tendered performance to the new board elected in January, he had in mind the contract that he believed to be embodied therein. But the paper thus written by the plaintiff, and produced for the signature of the two commissioners who had just voted for the resolution, not only negatives any presumption, if any such could have arisen, that plaintiff did assent to the offer contained in the resolution of December 21st, but conclusively shows that plaintiff did not accept the terms offered by the county in the resolution referred to. It shows, perhaps, a new proposition made by the plaintiff, accepting the terms offered by the county, with the important modification that the payments made for the safe should be considered as rent, and that the title of said safe

should not pass until all the deferred payment notes are paid or the safe paid for in cash, and that the title to said property should remain in the plaintiff until that time. It was also proposed that in default of payment of said rent, plaintiff or his agent might take possession and remove said safe without legal process, and that the payments actually made on account of rent might be retained by the plaintiff for the use of the safe, and that nothing but shipment or delivery should constitute an acceptance of the contract. There is also a stipulation at the close of the writing, that the foregoing embodied all the agreements made between the parties in any way, and that all claims or verbal or other agreements of any nature not embodied in the contract should be waived. But it is apparent that this modified proposition of the plaintiff was never accepted by the defendant. The commissioners never acted upon it officially as a board, and it is clear, as we have said, that the signature and acceptance of the paper by the two commissioners did not and could not bind the defendant county. It follows, then, that, inasmuch as the plaintiff never accepted the contract offered by the resolution of the board of commissioners, the minds of the parties never met, and the new board, after their election in January, properly repudiated the claim made by plaintiff in that regard.

The court excluded this paper from evidence, on the ground that it was offered as another contract than that sued on—one later in point of time, and one that expressly superseded all others. In this the paper did not constitute a contract between the de-
we agree, as we have said, with the learned
however, in his charge to the jury,