EVERY EVENING PRINTING CO. v. BUTLER.

(Circuit Court of Appeals, Third Circuit. May 3, 1906.)

1. COURTS—JURISDICTION OF FEDERAL COURTS—ALLEGATION OF CITIZENSHIP.
   Proper allegations showing diversity of citizenship made in a declaration filed in a circuit court are sufficient prima facie to give the court jurisdiction, and the allegation of plaintiff's citizenship can only be controverted by proper pleading supported by proof.
   [Ed. Note.—For cases in point, see vol. 13, Cent. Dig. Courts, §§ 817, 876, 298.
   Diverse citizenship as a ground of federal jurisdiction, see notes to Shipp v. Williams, 10 C. C. A. 249; Mason v. Dullagham, 27 C. C. A. 298].

2. LIBEL—PROOF OF INNUENDO—MATTERS FOR CONSIDERATION BY JURY.
   In an action for libel in which the declaration alleges by way of innuendo that plaintiff was the person meant in the statements made in the alleged libelous publication, such allegation must be proved, and while the impression which would be made on the mind of the ordinary reader is not conclusive on the issue it may be a pertinent inquiry under the facts and circumstances shown, and where such issue is found for plaintiff the question whether the publication would be understood by the ordinary reader to refer to plaintiff becomes material for consideration by the jury in determining whether or not the plaintiff was damaged.
   [Ed. Note.—For cases in point, see vol. 32, Cent. Dig. Libel and Slander, § 360.]

In Error to the Circuit Court of the United States for the District of Delaware.

See 140 Fed. 934.

Thomas F. Bayard, for plaintiff in error.

John P. Nields, for defendant in error.

Before DALLAS and GRAY, Circuit Judges, and McPHERSON, District Judge.

GRAY, Circuit Judge. A writ of error in this case brings before us the record of an action of trespass in the Circuit Court for the District of Delaware, in which the defendant in error was plaintiff, and the plaintiff in error was defendant. The defendant, as publisher

of a daily newspaper, was charged by plaintiff in her declaration with the publication of several false, scandalous and malicious libels, injurious to the good name, fame, credit and reputation of the said plaintiff. The alleged libel was printed as a news item in the "Every Evening," a daily newspaper published by the defendant, and is set forth in part as follows:

"Annie Oakley Arrested."

(Meaning said Annie Butler, the plaintiff, arrested.)

"Famous Woman Rifle Shot (meaning the plaintiff) Locked Up on Larceny Charge in Chicago.

"Annie Oakley (meaning the plaintiff), daughter-in-law of 'Buffalo Bill,' and the most famous woman rifle shot (meaning the plaintiff) in the world, was arrested in Chicago, Monday under a Bridewell sentence (meaning plaintiff was arrested in Chicago for an offense entailing imprisonment in a Chicago jail) for stealing the trousers of a negro in order to get money with which to buy cocaine (meaning that plaintiff, Annie Butler, had become so far depraved in her habits, that in order to gratify her longing for cocaine, she had committed theft in order to obtain money for that purpose and had been arrested and imprisoned for such theft.) This is the woman (meaning the plaintiff) for whose spectacular marksmanship King Edward (meaning King Edward VII of England) himself once led the applause in the courtyard of Buckingham Palace."

At the trial, there was testimony tending to show publication by the defendant company; that the plaintiff, Annie Butler, had, since 1885 until recently, been connected with the Wild West Show of Buffalo Bill, as an expert rifle and wing shot, under the name of "Annie Oakley," and that during this long period she had exhibited constantly in this rôle, in this country and in Europe, having only missed five performances during that time; that she had more than once exhibited before the Prince of Wales, now King Edward VII of England, in the courtyard of Buckingham Palace; and that, as Annie Oakley, the plaintiff was known as the most expert rifle shot the world over. The libelous parts of the publication, so far as the plaintiff was concerned, were admittedly false. The defendant, however, produced as a witness, one Maud Fontenniclo, who testified that she was arrested in Chicago, on the Saturday previous to the 12th of August, 1903, upon the charge as stated in the said libelous publication of that date; that she pleaded guilty to the charge, as stated, and was convicted and sent to the Bridewell Prison. She further testified that she was an expert rifle shot, and, as such, exhibited in connection with Cody's Wild West Show, similar to the one run by "Buffalo Bill"; that she was the wife of S. F. Cody, but no relation to Colonel Cody (alias "Buffalo Bill"): that at the police court in Chicago, she had given the name of Elizabeth Cody, and that she exhibited sometimes under the name of "Any Oak Lay," and she also shot under the name of Miss Lillian Cody, but that she never represented herself as "Annie Oakley."

Under instructions from the court, the case was submitted to the jury, by whom a verdict was rendered in favor of the plaintiff, for $3,600. Motion for a new trial was made by the defendant, and de-

nied by the court. There are 12 assignments of error. As to the first two, which allege error in the admission by the court of certain testimony as to publication by the defendant of the alleged libel, it is only necessary to say that, we think the testimony objected to was properly submitted to the jury, and quite sufficient to warrant their finding that the alleged libel was published by the defendant. The third assignment, though in form an allegation of error, in refusing to grant the defendant's motion for nonsuit, raised a question of jurisdiction which was passed upon by the court below adversely to the defendant, in refusing said motion. Though the refusal to grant a nonsuit is not reviewable here, we may notice the underlying question, which, as a question of jurisdiction arising out of the record, may be considered at any time, however presented, or by the court itself sua sponte.

The amended declaration thus states the jurisdictional facts:

"Every Evening Printing Company, a corporation created and organized under the laws of the state of Delaware, and a citizen of said state, having its principal office and place of business in the city of Wilmington in said state of Delaware, the defendant above named, was summoned to answer Annie Butler, a citizen of the state of New Jersey, residing at Nutley in said state of New Jersey, the plaintiff above named, of a plea of trespass on the case."

After the closing of the testimony, it was urged by counsel for the defendant, that it should have been affirmatively shown on the part of the plaintiff, that she was a citizen of New Jersey at the time of the bringing of the suit, or a citizen of some other state than the state of Delaware; that the citizenship of the husband determines the citizenship of the wife, and as there was absolutely no evidence as to the citizenship of the husband, there was no evidence as to the citizenship of the wife, and therefore plaintiff had failed to affirmatively show that the case was within the jurisdiction of the court. The court declined to accede to these propositions, on the ground that the requisite diversity of citizenship was averred in the declaration, and thus affirmatively appearing in the record the jurisdiction of the court attached, unless the prima facie truth of that averment was successfully controverted by competent evidence adduced at the proper time under a plea of abatement, or some other appropriate plea, or notice to the opposite party. In this case, there was no such plea or notice or proof to controvert the averment of diverse citizenship in the declaration. The plaintiff in error relies entirely upon the fact that defendant in error testified that she was married, and that there was no proof of the residence or citizenship of her husband. This fact, however, is not inconsistent with the averment of citizenship made by plaintiff in her declaration. Even if defendant below had challenged the jurisdictional fact of diverse citizenship, as alleged in the declaration, at the proper time, by appropriate plea or notice, the burden of proving by competent evidence its own affirmative averment in that regard, would have fallen upon it. Hartog v. Memory, 116 U. S. 588, 6 Sup. Ct. 521, 29 L. Ed. 725; Morris v. Gilmer, 129 U. S. 315, 9 Sup. Ct. 289, 32 L. Ed. 690; Adams v. Shirk, 117 Fed. 801, 55 C. C. A. 25.

In this state of the case, the court below, seeing no ground to exercise the authority conferred by section 5 of the act of March 3, 1875, to determine the jurisdiction of Circuit Courts of the United States, etc. (18 Stat. 472, c. 137 [U. S. Comp. St. 1901, p. 511]), but being satisfied that the averment of diverse citizenship had been made in good faith by the plaintiff, properly asserted its jurisdiction. As the case stood in the court below, its jurisdiction was not in issue, and no ground for a writ of error from, and certification of a question of jurisdiction to, the Supreme Court existed. Act March 3, 1891, establishing Courts of Appeal, sections 5, 6, c. 517, 26 Stat. 827, 828 [U. S. Comp. St. 1901, pp. 549, 550]. In this state of the record, we are bound to recognize the jurisdiction of the court below, by reason of the uncontroverted diverse citizenship adequately asserted in the declaration, and there is no question of jurisdiction requiring or admitting of certification by this Court to the Supreme Court, as in the case of Sun Printing & Pub. Ass'n v. Edwards, 194 U. S. 377, 24 Sup. Ct. 696, 48 L. Ed. 1027.

The remaining assignments of error except to the following portions of the charge made to the jury by the learned trial judge:

"If, however, you find the article in question was published by the defendant, then the further question arises whether or not the article referred to the plaintiff *or was in whole or in part of such a character as to cause ordinary readers thereof to believe that it applied to the plaintiff.* * * * If you find that the article did refer to the plaintiff or in *whole or in part was of such a character as to create such belief*, the further question then arises whether or not the article in whole or in part contained a libel upon the plaintiff. * * * The question for your determination in this connection is, not whether the article complained of contains inaccuracies or misstatements on minor or less conspicuous points bearing upon or against the identity of the Annie Oakley mentioned in the article with the plaintiff, *but whether, in view of the circumstances above mentioned, ordinary readers of the article and particularly those unacquainted with her domestic relationships would not naturally and reasonably be led to the belief or conclusion that the 'Annie Oakley' mentioned in the article was one and the same person with the plaintiff.* * * * If full credence be given to the testimony of Mrs. Fontennielo, *does it serve to show that the article complained of would not be regarded by ordinary readers as referring to the plaintiff?* * * * As between Mrs. Fontennielo shooting under the name of 'Lillian Cody or Any Oak Lay,' and the plaintiff shooting under the name of 'Annie Oakley,' and in view of the language of the article and the evidence as to the established and far-reaching fame of the plaintiff, *what is the only reasonable conclusion as to the effect of the newspaper article upon the minds of the great mass of readers?* * * * It may be true, and probably is true, that portions of the newspaper article are applicable to Mrs. Fontennielo, but it does not by any means follow from that fact, if it be a fact, *that the newspaper article did not refer to the plaintiff and would not be generally understood and considered as referring to her.* If you are satisfied by the evidence that the newspaper article referred to the plaintiff *and would be so considered by ordinary readers,* did it or not contain a libel upon the plaintiff?"

Counsel for plaintiff in error, in his brief, has italicized, as above, the parts of the charge to which his criticism is particularly directed. His general contention is, that inasmuch as, in actions for defamation, witnesses cannot be allowed to testify as to the meaning which they understood the alleged defamatory matter to convey, or the particular person to whom they understood it to apply, therefore the jury can-

not, to use his own words, "go outside the evidence adduced before them, and form an opinion of an opinion formed in the minds of the general readers of the newspaper in which the publication was made;" and he cites authorities to the effect, that the court and jury, and not the witnesses, are to construe the words of the alleged libel. This is all true. Undoubtedly the jury must determine from the evidence adduced, the truth of the innuendo, that the plaintiff, Annie Butler, was intended by and referred to in the publication in question. If the plaintiff was so intended to be referred to, the publication set out in the declaration was admittedly libelous per se. The burden was upon the plaintiff to adduce sufficient evidence of facts and circumstances from which the truth of this innuendo as to the person meant, could be established. The paper in question was before the jury, and the testimony as to surrounding facts and circumstances, such as that under the name of "Annie Oakley," the plaintiff was an expert rifle shot of world wide fame; that as such, and under that name, she had for many years exhibited with Buffalo Bill's Wild West Show, and had exhibited her skill before the Prince of Wales, now King Edward VII, in the courtyard of Buckingham Palace. From these and other facts, it was competent for the jury to find, and we may add that we think they were justified in finding, that the plaintiff was the person meant in the publication in question, as stated in the innuendo. The name "Annie Oakley," under which she had for many years exhibited as a rifle shot, clearly designated her, and the other facts of her career made the designation the more emphatic. It is true, that the testimony of the woman, Maud Fontennielo, hereinbefore referred to, tended to show that she was the real person arrested and tried before the magistrate in Chicago. This and the idem sonans of her stage name in the Wild West Show with that of the plaintiff, together with somewhat similar incidents in her career as an expert rifle shot, though competent evidence to go to the jury on the question of the identity of the person meant in the libel, was not conclusive, and the jury were clearly justified, notwithstanding such testimony, in finding as they did that the plaintiff was the person meant.

It is entirely probable that there was an antecedent and innocent mistake as to identity, but there does not seem to be room for doubt as to the identical female intended in the libel itself. However such antecedent mistake might morally excuse the one who made it, it cannot legally excuse the perpetrator of the libel caused by that mistake, or relieve him from responsibility for the injury to the plaintiff resulting therefrom. The injury for which compensation was sought, was that to the reputation of the plaintiff, in the common estimation of mankind. If that reputation suffered, it was by the impression made upon the minds of those who read the libelous article,—the impression made upon the ordinary reader, the reader of ordinary intelligence and information. The jury for the time being stand for such ordinary reader, and with the libel before them, and all the evidential facts and circumstances testified to, they must find what impression the libel in question would make upon the mind of an ordinary reader, from the impression made upon their own minds. The jury stand, as we have stand, for the ordinary reader, just as they must stand for the person

of ordinary prudence, when the question in negligence cases is what, under given circumstances, would have been the conduct of an ordinarily prudent person, or for the ordinarily reasonable man, where the reasonableness of conduct is in issue.

If the jury should find that, notwithstanding their belief that the plaintiff was meant in the libelous publication, no impression that she was so meant was likely to be made on the mind of the ordinary reader, she was not hurt in her reputation and she cannot recover. While the impression made on the ordinary reader, by the alleged libel, may or may not be conclusive or pertinent in determining the issue joined on the innuendo, as to who was meant to be referred to therein, it is the indispensable ground for determining the question of injury to the reputation of the plaintiff, when once the identity is established. If, however, the person meant in the alleged libel to be referred to, is not believed by the jury to be the plaintiff, the fact that they find or believe that ordinary readers would be so impressed, would not be sufficient ground upon which to find a verdict of guilty against the defendant. And so, as to the suppositious case put by counsel for plaintiff in error, of a newspaper stating that one John Smith, a blacksmith, of a certain vicinage, was arrested and committed on a charge of larceny, and there were five John Smiths, blacksmiths, of the same vicinage. Would each or any of them, the query is put, have a right to damages in a libel suit against the newspaper, on the ground that ordinary readers would have the impression that the particular John Smith, the plaintiff, was the one referred to? The question must be answered: Not on that ground alone. The plaintiff must establish to the satisfaction of the jury the truth of the innuendo, that by the John Smith so arrested, was meant the plaintiff. The case supposed, well illustrates the distinction between proving the innuendo that applies the libel to the plaintiff, and the finding by the jury, essential to the recovery of damages, of the impression that would be made upon the mind of ordinary readers of the libel, and that while the impression had by an ordinary reader might be relevant as to who was meant to be referred to in the libel, it is not conclusive.

Coming to the case before us, if, assuming that plaintiff had been intended by the author of the libel, the point had been made that yet no reader could have understood her to be so intended, that point, abstractly considered, would have been a valid one, for if not even a single reader would have associated her with the article, she could not have been hurt, and any evidence tending to show that fact, might have gone to the jury under the instructions given by the court below. The real question in the case, however, was as to the person meant to be referred to in the article, as to which the evidence was, in our opinion, so conclusive that the court below would have been justified in giving binding instructions in reference to it. This being so, and as in this case, the impression made by the libel on the ordinary reader was relevant to the issue as to the truth of the innuendo that the plaintiff was the person meant by the libelant to be referred to, no error of which defendant had a right to complain, was committed by the trial judge in thus submitting the question to the jury.

The judgment below is therefore affirmed.