## ALWART BROS. COAL CO. v. ROYAL COLLIERY CO.

(Circuit Court of Appeals, Seventh Circuit.   April 18, 1916.)

### No. 2313.

1. SALES ⊚⟶181(11)—BREACH OF CONTRACT—CANCELLATION AND RESCISSION.

Evidence *held* sufficient to sustain a finding that buyer breached a contract for the sale and delivery of coal, by failing to order the amount of coal contracted for, and that seller was within its rights in canceling the contract.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 486, 487, 490; Dec. Dig. ⊚⟶181(11).]

2. SALES ⊚⟶152—CONTRACTS—BREACH.

Where buyer failed to order from defendant coal in quantities as contracted for, to be delivered monthly, and thereafter demanded monthly deliveries in excess of the contract requirements to make up the deficiency, and threatened suit for failure to deliver such deficiency, the seller was relieved from any obligation to make further deliveries as for want of proper order.

[Ed. Note.—For other cases, see Sales, Cent. Dig. § 357; Dec. Dig. ⊚⟶ 152.]

3. NEW TRIAL ⊚⟶165—ON MOTION OF BOTH PARTIES—VACATION ON MOTION OF ONE PARTY.

Where the court granted a new trial on motion of both plaintiff and defendant, a vacation of the order thereafter on motion of plaintiff *held* proper, since the evidence was not in dispute, and there had already been three nisi prius hearings.

[Ed. Note.—For other cases, see New Trial, Cent. Dig. §§ 334, 335; Dec. Dig. ⊚⟶165.]

4. TRIAL ⊚⟶251(4)—INSTRUCTIONS—CONFORMITY TO PLEADINGS.

In a suit upon contract, the court properly refused to submit the issue of an alleged agreement in modification or settlement of the original obligation; such agreement not being within the issues pleaded.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 591; Dec. Dig. ⊚⟶251(4).]

In Error to the District Court of the United States for the Eastern Division of the Northern District of Illinois.

Suit by the Alwart Bros. Coal Company against the Royal Colliery Company. From a judgment for defendant, plaintiff brings error. Affirmed.

See, also, 211 Fed. 313, 127 C. C. A. 599.

For the purpose of enabling it to fill its contract with the board of education of the city of Chicago, plaintiff in error, termed plaintiff herein, entered into a written agreement with defendant in error, termed defendant, whereby defendant undertook to sell and deliver to plaintiff in, approximately equal monthly quantities between July 25, 1911, and March 31, 1912, as ordered by purchaser, four-sevenths of the requirements for the schools of certain districts mentioned, approximately 20,000 tons of coal as specified in the contract, at the price of $1.07½ per ton at the mine in Virden, Ill.   Both contracts contained a certain clause L, by which the board of education should charge back to plaintiff coal that it necessarily purchased in the market to supply the schools during such times as plaintiff failed to supply the prescribed amount of coal, as to which defendant in its turn agreed to indemnify plaintiff for any such loss as might be ascribed to its failure to comply with the contract. Plaintiff was required to pay defendant on or before the 20th of each month 50 per cent. of the value of all coal shipped during the previous month.   The

⊚⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

remaining 50 per cent. was to be paid on or before the 10th day of the second succeeding month. If payments were not made within the agreed time, the seller could suspend further shipments, on five days' notice, until payment, or could treat the contract as broken by plaintiff. The present demand covers only the right of plaintiff under said contract for the months of January, February, and March, 1912. Other contentions between the parties were disposed of by this court in Alwart Bros. Coal Co. v. Royal Colliery Co., 211 Fed. 313, 127 C. C. A. 599.

From the evidence it appears that plaintiff ordered and received on the contract less than 6.000 tons of coal up to January 1, 1912. During January, 1912, plaintiff ordered 2,500 tons and received but 1,690. During February, 1912, plaintiff likewise ordered 2,500 tons and received but 1,570 up to February 20, 1912. On February 17, 1912, plaintiff demanded that defendant deliver between that date and March 31, 1912, 7,500 tons of coal not ordered or delivered prior to January 1, 1912, in addition to the 2,500 tons, which coal plaintiff was entitled to have had delivered, had it been ordered, prior to January 1, 1912. On February 19, 1912, plaintiff threatened suit if defendant did not deliver 12,000 tons of coal, to apply upon the 20,000 tons covered by the contract, before April 1, 1912. In the meantime the price of coal had advanced materially. Paul J. Alwart and Frederick W. Alwart, of the plaintiff company, testify that on February 19, 1912, they called upon defendant, asking for more coal, and that Maloney, representing the defendant company, promised, "I will give you 6,000 tons in two weeks." This promise was not declared on.

On February 20, 1912, plaintiff wrote to defendant as follows: "We tried to get you on the phone this morning. Since talking with you yesterday, we have found the school supply is very low. In order that there may be no misunderstanding, we thought it well to write you confirming what our Mr. Alwart said in his interview with you Saturday, and to let you know our needs in the matter of delivery of coal under our contract with you. Although this contract calls for 20,000 tons of coal, we had received only about 6,000 to February 1st. For the month of January we gave orders for 5,000 tons of coal, but received only 1,600 tons. The loss on this in money actually paid out or now due is not less than $3,000, and it is probable that will not nearly cover our loss. For the next two weeks we will require 6,000 tons of coal under our contract, and would ask you to commence delivering it at once at the rate of 8 to 10 cars a day. Between now and April 1st we want you to deliver the balance of our 20,000 tons. Please let us hear from you, and let us know what we may expect in the way of immediate deliveries. Your early reply will greatly oblige. Referring to the question of releasing you on part of your. deliveries, we decided to wait till we see what effort you make to supply us between now and April 1st."

To this defendant replied on February 21, 1912: "Your letter of February 20th received. You have failed to comply with the terms of your contract in important respects. and we have elected to rescind the contract, and accordingly hereby so notify you. As stated to you orally, we have been willing to ship the coal which the schools will consume during the remainder of this month and the next month, notwithstanding the fact that you have deprived us of all benefit of the contract by failure to take the coal in monthly installments as provided, and notwithstanding this notice, we stand ready to help you out to any reasonable extent. We offer to ship. under the same terms and conditions provided in the contract, the coal which the schools will consume during the remainder of this month and next month."

On February 22, 1912, plaintiff wrote to defendant: "This is to confirm conversation had between your Mr. Maloney and our Mr. Alwart to-day. Our understanding is that if you deliver us 8,000 tons of coal of the kind required by our contract with you, between now and April 1st, commencing shipments promptly and continuing at the rate of about 300 tons per day for 10 days, and thereafter approximately equal daily deliveries, so as to make the 8,000 tons by April 1st, we will release you from further liabilities on your contract with us dated July 25, 1911. If we do not receive the full 8,000 tons as specified in this letter, you will not be released from any of your obligations under the contract of July 25th."

Defendant, on February 23, 1912, replied: "Your letter of February 22d received. We have no such understanding as you therein say you have. Our position is defined in our letter of the 21st instant. We still offer to ship, under the same terms and conditions, the coal which the schools will consume during the remainder of this month and next month. This offer is made in the spirit of concession, and is subject to withdrawal at any time before acceptance."

On the same day plaintiff replied: "We have your letters of the 21st and 23d inst. Our contract with you has been lived up to by us in every particular. It is evident that you do not intend to comply with the terms of your contract with us, and of course you have not complied with it to date. You say that you offer to ship us the coal necessary for the schools. It is not enough to offer to do it; we want you to do it. Please get busy and ship us the coal for the schools. We renew the demands contained in our letter to you of the 20th inst., and, unless shipments are commenced at once, we will buy coal in the open market to supply the school and to make up the amount due us under our contract with you for 20,000 tons, and charge you with the difference between what we pay for it and the price you agreed to furnish it to us for, and also charge you with the other damage we sustain by reason of the school board paying extra prices for any coal that we may not be able to deliver and other damage that we may sustain by reason of your failure to fulfill your contract with us."

To this defendant answered on February 24, 1912: "We acknowledge receipt of your favor of the 23d instant. As per our letter of the 21st instant, we have rescinded the contract and will make no further shipments under it. We repeat, however, that we are willing to ship four-sevenths of the coal the schools will consume until April 1, 1912, at the same price and on the same conditions as specified in the contract. You are demanding practically 12,000 tons, and at the same time admitting that the requirements will not be for that tonnage. You are asking us to ship you coal to be used several months after March 31, 1912. If you care to accept our proposition and will advise us of the actual requirements, we will ship the coal, or we will engage to ship a specified tonnage."

On February 24, 1912, plaintiff writes: "We have your letter of the 24th inst. You owe us about 12,000 tons of coal under our contract with you of July 25, 1911. We estimate that the requirements of the schools by the end of the school year will be 35,000 tons of coal, of which you were required to ship 20,000 tons. The future requirements of the schools we estimate to be 20,000 tons, and the immediate requirements for the next month or two will be some 15 cars per day. We again demand that you proceed to ship us coal under your contract to supply the schools. Failing to do so, we will hold you liable for such damages as we may sustain by reason of your breach of contract."

And again, on March 2, 1912: "On account of your failure to deliver coal to us according to our demands during January and February, we are short in our supplies for the schools, and will require much larger shipments during the month of March on that account. Please ship us coal all during the month of March at the rate of 500 tons a day, to take care of our requirements in supplying the schools. We are making this demand under our contract with you dated July 25th, 1911. Any coal shipped us during the month of March by you, in excess of our requirements for the school, will be applied on the shortages of your shipments for the months of January and February, and will consequently release you to that extent from the damages that we are entitled to recover from you on account of your failure to ship us during January and February."

To which defendant makes a final reply on March 4, 1912: "Your letter of March 2d received. It is not in accordance with our conversation. We are willing to make reasonable concessions to close up the situation. To put the matter finally at rest, we state our position as follows: (1) The contract has been terminated by our letter of February 21st. (2) Under the contract you would be entitled to receive no more than 2,500 tons in any one month. (3) You cannot, under the contract, ask us to ship in February and March what you should have taken in August, September, and October. (4) Under the

contract, we could not ship until you gave us orders. Your failure to give orders when the market was way below the contract price materially damaged us. (5) In January and February we shipped your proportion of our output as provided in the contract. But, as repeatedly stated to you, we are willing to, and hereby offer to, ship during March the actual requirements of the schools, not to exceed 2,500 tons; or we will agree to ship a specified tonnage —giving you not only the 2,500 tons, but an additional 1,000 tons. We will, in addition, waive our claim for damages. This is to be open for acceptance until Wednesday next."

Payments were not made by plaintiff as provided in the contract, to collect which defendant brought suit. 211 Fed. 313. No shipments of coal were made after February 20, 1912. As will be seen from the letters, defendant treated the contract as broken by plaintiff as of about February 20, 1912, for failure to pay as agreed, and for the demands and threats made by plaintiff with regard to the amount of coal claimed. The amount of coal charged back to plaintiff which defendant agreed to pay for was, in January, roundly 353 tons, and, for the first 20 days of February, roundly 74 tons. Evidence in regard to these items, together with the evidence as to claim for damages for coal which should have been and was not delivered according to the contract on the 2,500 orders in January and up to February 20, 1912, the court submitted to the jury. The latter were instructed that the contract was ended February 20, 1912, and that no case was made for damages for failure to deliver 6,000 tons of coal before March 31, 1912. After verdict both parties moved for a new trial, which was granted. On request of plaintiff's associate counsel, the order for a new trial was vacated. The instruction of the court to the effect that the contract called for the delivery on order of 2,500 tons of coal each month—month by month—spread out reasonably over each month, and not bunched, even though not so ordered, is assigned for error, as are the instructions that the contract was ended on February 20, 1912, and the direction to the jury to ignore the conversation with regard to the alleged settlement on 6,000 tons of coal. No other errors are assigned.

John A. McKeown, of Chicago, Ill., for plaintiff in error.
Frank Crozier, of Chicago, Ill., for defendant in error.

Before BAKER, KOHLSAAT, and ALSCHULER, Circuit Judges.

KOHLSAAT, Circuit Judge (after stating the facts as above). [1] When this cause was before us with case No. 1999, on January 6, 1914, we held that the contract called for monthly shipments as near as might be, and that in the absence of orders no obligation rested on the shipper to deliver such monthly installments of coal up to January 1, 1912, either during the month or thereafter; that each monthly requirement was severable. Alwart Bros. Coal Co. v. Royal Colliery Co., supra. We find no material variation in the evidence there adduced, as disclosed in the opinion, and here, sufficient to justify any different conclusion. The only change consisted in adding the words "within two weeks." The evidence herein fully sustains the contention, there assumed, that defendant had the right to and did cancel the contract on February 20, 1912, under the provisions of the contract.

[2] We are, moreover, of the opinion that, by reason of its demands for deliveries far in excess of 2,500 tons per month, together with its threats to bring suit for failure of defendant to make good the shipments neither ordered nor attempted to be delivered prior to January 1, 1912—which deliveries we held, in effect, in the above-named case, it was not bound to make—and the intimations contained in the letters to the effect that delivery of 2,500 tons of coal per month would

not be accepted as a compliance with the contract, defendant was relieved from any obligation to make further deliveries after February 20, 1912, as for want of proper order as well so to do. Park Steel Co. v. Staver Carriage Co., 125 Ill. App. 105. No shipment was made after February 20, 1912.

[3, 4] With regard to the plaintiff's failure to take a new trial, it was not bound to do so. It had had three nisi prius hearings, and was advised of the court's judgment as to the matters here involved. The evidence was not in dispute. Plaintiff was entitled to this court's judgment upon that evidence. There was no merit in the assignment of error upon the District Court's failure to submit the alleged agreement to deliver 6,000 or more tons of coal between February 20, 1912, and April 1, 1912. The suit was on the original agreement. No case was made out upon the pleadings with regard to that agreement, which, if made, was a new one, and in the nature of a settlement.

We find no error, and the judgment is affirmed.