KAWIN & CO. v. AMERICAN COLORTYPE CO.

(Circuit Court of Appeals, Seventh Circuit.    April 10, 1917.)

No. 2289.

1. COURTS ☞405(5)—CIRCUIT COURT OF APPEALS—JURISDICTION—CASES INVOLVING JURISDICTION OF DISTRICT COURT.

Though the question of the District Court's jurisdiction was raised in that court by defendant and decided against it, defendant was not required to take the case directly to the Supreme Court, but could appeal to the Circuit Court of Appeals from the judgment against it on the merits, and have the question of jurisdiction certified by that court.

2. COURTS ☞323—DIVERSITY OF CITIZENSHIP—ADMISSIONS—FAILURE TO TRAVERSE OR DENY.

An allegation in the declaration as to diversity of citizenship was prima facie proof thereof, and unless it was traversed, and proof made to the contrary, it was established as by default, especially where defendant, an Illinois corporation, in its plea of set-off, alleged that plaintiff was a citizen of New Jersey; this amounting to an admission, in the absence of any plea or evidence to the contrary.

3. CORPORATIONS ☞657(3), 661(7) — FOREIGN CORPORATIONS — CONTRACTS — RIGHT TO SUE.

A state statute (Hurd's Rev. St. Ill. 1915–16, c. 32, § 67g) requiring the filing of reports, and providing that no suit may be maintained upon any claim, whether arising out of a contract or tort, in any court in the state, unless the statute shall be complied with, simply provides the penalty of exclusion from the state courts, and does not invalidate a contract on which a cause of action has arisen and become complete before the failure to file the report, and an action thereon may be maintained in the federal court.

4. EVIDENCE ☞213(2)—ADMISSIONS—OFFERS OF COMPROMISE.

The admission of an offer to pay an undisputed claim and get a full discharge was not erroneous, as the admission of an offer of compromise.

5. TRIAL ☞82—OBJECTIONS TO EVIDENCE—GENERAL OR SPECIFIC OBJECTIONS.

There was no error in admitting evidence over a general objection stating no ground of objection.

6. WITNESSES &#9752;&#8594;275(1)—CROSS-EXAMINATION OF PARTY—SCOPE.

On the cross-examination of a stockholder in the defendant corporation, a wide latitude was permissible.

7. WITNESSES &#9752;&#8594;275(1)—CROSS-EXAMINATION OF PARTY—DISCRETION.

The court has a wide discretion in the matter of the examination of an adverse party.

8. CUSTOMS AND USAGES &#9752;&#8594;17—VARYING TERMS OF WRITTEN CONTRACT.

In an action for breach of a contract to purchase Christmas cards to be delivered as ordered, the admission of testimony as to the reasons why the cards were not cut and packed before they were ordered did not vary the written contract, where it tended to show a usage of the trade, known to the parties, and in the light of which the contract was made.

9. SALES &#9752;&#8594;387—ACTIONS FOR DAMAGES—QUESTIONS FOR JURY.

In an action for damages for a buyer's failure to accept Christmas cards under a contract for the sale of Christmas and New Year cards, where the evidence that the buyer had waived further delivery of New Year cards was clear, the court was justified in declining to submit this issue to the jury.

10. SALES &#9752;&#8594;81(5)—NECESSITY OF TENDER BY SELLER.

Under a contract for the sale of 4,500,000 Christmas cards, to be delivered as ordered and all to be taken by December 15th, the seller was not required to tender the entire quantity on or before December 15th, without orders from the buyer.

11. SALES &#9752;&#8594;81(5)—TIME FOR DELIVERY AFTER DEMAND.

Where 2,000,000 of the cards remained unordered and undelivered on December 14th, on which date the buyer asked prompt delivery of the balance of the cards, the seller was entitled to a reasonable time within which to deliver.

12. SALES &#9752;&#8594;340—REMEDIES OF SELLER—ACTIONS FOR PRICE.

Under the rule in Illinois, the seller, upon the buyer's refusal to accept goods tendered or ready for delivery, has the option to vest the buyer with title, notwithstanding its refusal to accept and sue for the contract price.

13. COURTS &#9752;&#8594;367—DECISIONS OF STATE COURTS—AUTHORITY IN FEDERAL COURTS.

The holding of the Illinois courts that, upon a buyer's refusal to accept goods, the seller may at his option vest title in the buyer and sue for the price, is binding on a federal court sitting in Illinois and adjudicating an Illinois agreement, as such court must follow the state decisions on matters of personal as well as real property.

14. COURTS &#9752;&#8594;372(4)—DECISIONS OF STATE COURTS—AUTHORITY IN FEDERAL COURTS.

Even though in Illinois the recovery of the purchase price of goods which the buyer refuses to accept is deemed merely the proper measure of damages for breach of the contract, and title vests only on satisfaction of the judgment, the federal courts, while not bound to follow the state decisions, nevertheless, for the sake of harmony and to avoid confusion, will lean towards an agreement of views with the state court, if the question seems balanced with doubt.

15. SALES &#9752;&#8594;340—REMEDIES OF SELLER—ACTIONS FOR PRICE.

Where a buyer refused to accept Christmas cards, which at best were not marketable in any real sense until long after the breach, the seller was not compelled to keep them and recover the difference between the contract price and a highly uncertain market value, but might sue for the contract price.

16. SALES &#9752;&#8594;340—REMEDIES OF SELLER—ACTIONS FOR PRICE.

Where goods were tendered by the seller or ready for delivery and appropriated to the contract, the seller, upon the buyer's refusal to accept, may recover the purchase price under the common counts.

&#9752;&#8594;For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

17. NEW TRIAL ⬤=64—CORRECTION OF VERDICT—HARMLESS ERROR.

Where the jury rendered a sealed verdict, which contained data from which a properly worded verdict could be arrived at, but was irregular in respect to a definite finding of the amount of damages, the error, if any, in reimpaneling the jury to correct this technical irregularity, was a mere formality, and not ground for a new trial.

18. PLEADING ⬤=173—REPLICATION—FORM—CONCLUSION.

Where the replication to a plea setting up plaintiff's failure to comply with statutes governing foreign corporations set up no new matter by way of inducement, but matters which constituted merely an admission of the matters of inducement alleged in the plea, it properly concluded to the country, instead of with a verification.

In Error to the District Court of the United States for the Eastern Division of the Northern District of Illinois.

Action by the American Colortype Company against Kawin & Co., a corporation. Judgment for plaintiff, and defendant brings error. Affirmed.

American Colortype Company, herein called plaintiff, a New Jersey corporation, brought this suit against Kawin & Company, defendant, an Illinois corporation, for failure of the latter to take and pay for certain Christmas and New Year cards ordered by the latter on July 12, 1911, to be delivered as ordered and all to be taken by December 15, 1911. The contract of purchase was by letter, and called for 4,500,000 Christmas and 500,000 New Year cards at $1.50 per thousand. The letter contained the phrase "same subjects as 1910." On December 14, 1911, there remained unordered and undelivered about 2,000,000 of the Christmas cards and about 150,000 of the New Year cards. On this day Kawin & Co. wrote a letter asking for prompt delivery of the balance of the cards. Plaintiff received this order on the 15th of December, 1911, and on the 16th sent a letter stating the goods would be sent at once, immediately sending on 320,000 of the Christmas cards, and on December 18th 800,000 more. On the 19th of December following, defendant wrote a letter declining to receive the 320,000 of cards, because there were no New Year cards, and that, the same not having been delivered by the 15th of December, it would receive no more cards under the contract. Defendant undertook to return the 320,000 lot, but on plaintiff's refusal to accept them placed the same in storage and notified plaintiff.

The suit was brought for the purchase price, on the theory that the cards were ready for delivery within a reasonable time after they were ordered, that they were appropriated to defendant, and that a sale was effected, so that defendant became liable for the contract price. The cause went to a jury, which rendered a verdict upon that basis. It appears in evidence that after the delivery of about 320,000 of the New Year cards, and on September 8, 1911, plaintiff advised defendant that its stock of New Year cards was exhausted, and inquired whether defendant would insist on the balance of the 500,000 New Year cards, which would involve the printing of a new edition of approximately 1,500,000 cards. Defendant replied that it would not require that to be done. On December 2, 1911, defendant claims to have asked plaintiff to look around and see if it could not find more New Year cards. Plaintiff replied that it did not have any. This was followed by the repudiating letter of December 19, 1911. A letter of December 7, 1911, from defendant to one of its salesmen, was admitted in evidence, from which it might appear, and the jury might have found, that defendant was then looking for an excuse to avoid taking the balance of the cards. With reference to the phrase "same subjects as 1910," it appears that during that year the same parties had made a contract whereby defendant was obligated to take and plaintiff agreed to deliver 20,000,000 New Year and Christmas cards, of which 14,000,-000 had been printed when defendant asked to have the order reduced. Only 9,000,000 of these were delivered, plaintiff seemingly accepting the counter-

⬤=For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

manding order, leaving 5,000,000 on plaintiff's hands. It seems from the evidence the jury was warranted in finding that these last-named cards were in mind' and covered the "subjects" referred to in the contract letter of July 12, 1911. But that contract did not amount to a present sale of the 1910 cards, or to an agreement to deliver those specified cards that were then on hand. Those cards were in large sheets, which only required cutting up into cards as ordered, and were of designs selected by and printed for defendant, and suitable for any year. The evidence tended to show that upon receipt of the order of December 14, 1911, they were cut and packed for delivery. Defendant was familiar with the steps necessary to be taken to prepare them for delivery when cards were ordered.

The declaration consists of two special. counts, and the common counts. Defendant filed six pleas: (1) Non assumpsit, to which a similiter was filed. (2) A plea of set-off, containing the common counts to set off certain commissions or percentages claimed on account of sales of pictures made by plaintiff to a third party, amounting to $2,000, to which plaintiff filed a replication of non assumpsit, to which replication a similiter was filed. (3) A plea setting up plaintiff's failure to comply with certain statutes of the state of Illinois requiring the filing of its charter, etc., before being qualified to do business in the state. A replication to this plea denied such failure and concluded to the country. To this a similiter was filed. (4, 5, and 6) Three pleas setting up failure of plaintiff to make report to the secretary of state of Illinois as provided by statute requiring corporations so to do, etc., and fixing penalties, such as the cancellation of its charter. To these pleas a joint demurrer was filed, and sustained by the court, which ruling was duly excepted to by the defendant. At the close of the evidence the cause was submitted to the jury, which was directed to bring in a sealed verdict. This verdict contained data from which a properly worded verdict could be arrived at, but was in respect to a definite finding of the amount of damages due to plaintiff irregular. After the verdict was rendered the jury disbanded. They were on the next morning reimpaneled and resworn, and proceeded to make their verdict plainer and more definite, rendering a verdict for $11,119.47, upon which the court entered judgment and ordered execution.

For error defendant assigns the following, viz.: The court sustained the demurrer to the fourth, fifth, and sixth pleas. It admitted in evidence certain offers of compromise and a letter to one of its employés written by defendant, over its objection. It refused the motion of defendant to instruct the jury to find for defendant. It instructed the jury that the contract in suit was separable. It refused to instruct the jury that plaintiff was not bound to deliver the cards in suit without an order before the close of business on December 15, 1911. It instructed the jury that the order in suit was severable. It refused to instruct the jury that no recovery could be had for want of mutuality. It refused to instruct the jury that, no damages having been proved, no recovery could be had. It refused to instruct the jury that, unless plaintiff was ready to deliver the whole of the cards on December 15, 1911, no recovery could be had. It charged the jury that plaintiff was entitled to a reasonable time in which to comply with the order of December 14th. It permitted the jury, after it was disbanded, to reassemble and amend its verdict.

Other facts appear in the opinion.

Jacob Ringer and Matthias Concannon, both of Chicago, Ill., for plaintiff in error.

John M. Zane, of Chicago, Ill., for defendant in error.

Before KOHLSAAT, MACK, and ALSCHULER, Circuit Judges.

ALSCHULER, Circuit Judge (after stating the facts as above). [1] Plaintiff moved to dismiss the writ of error herein upon the ground that, defendant having raised the question of the jurisdiction of the District Court to render the judgment complained of, it fol-

lows that the case should have gone directly to the Supreme Court. We find no merit in the point. In United States v. Jahn, 155 U. S. 109, 15 Sup. Ct. 39, 39 L. Ed. 87, it is said:

"If the question of jurisdiction is in issue, and the jurisdiction sustained, and judgment on the merits is rendered in favor of the plaintiff, then the defendant can elect either to have the question certified and come directly to this court, or to carry the whole case to the Circuit Court of Appeals, and the question of jurisdiction can be certified to by that court."

This we deem to be the law at this time applicable to the present case. We therefore deny the motion to dismiss.

[2] Defendant raised, as a question going to the jurisdiction, that it does not appear that diversity of citizenship exists between the parties. The declaration sets out the diversity of citizenship, but no evidence seems to have been taken on that matter. It is nowhere denied in terms, but defendant insists it was traversed by the plea of general issue. We regard this as without merit. The question was not raised by plea in abatement. In Illinois the common-law rules of practice prevail. There was no plea denying the citizenship of the parties as alleged in the declaration. That allegation was for the purposes of the present motion prima facie proof of the fact, and unless it was traversed, and proof made to the contrary, it was established as by default. We held in Adams v. Shirk, 117 Fed. 801, 55 C. C. A. 25, that, even when raised by plea in abatement, defendant had the burden of proving the lack of diversity of citizenship, when the proper averment appeared in the pleading by the plaintiff. This is approved in Every Evening Printing Co. v. Butler, 144 Fed. 916, 75 C. C. A. 657; Hill v. Walker, 167 Fed. 241, 92 C. C. A. 633; Hartog v. Memory, 116 U. S. 588, 6 Sup. Ct. 521, 29 L. Ed. 725; Barry v. Edmunds, 116 U. S. 550, 6 Sup. Ct. 501, 29 L. Ed. 729; Pike County v. Spencer, 192 Fed. 11, 112 C. C. A. 433; Water Works v. Ryan, 181 U. S. 409, 21 Sup. Ct. 709, 45 L. Ed. 927. Moreover, it was charged by defendant in its second plea that plaintiff was a citizen of New Jersey. In the absence of any plea or evidence to the contrary, this amounted to an admission.

[3] The assignment of error on the part of the court in sustaining the demurrers to the fourth, fifth, and sixth pleas is not well taken. The pleas concede that plaintiff had duly qualified to do business in the state of Illinois and was still so qualified, but allege that, after the contracts had been executed, the breaches thereof arisen, and the cause of action become complete, plaintiff had failed to file an annual report, which failure precluded it, under the terms of the statute of Illinois, from maintaining a suit, not only in the state, but also in the federal, court. The language of the statute, so far as pertinent, is, "No suit may be maintained either at law or in equity upon any claim, legal or equitable, whether arising out of contract or tort in any court in this state" (Hurd's Rev. St. 1915–16, c. 32, § 67g) unless the statute shall be complied with. It will be seen that the statute does not undertake to make the contract void, but simply provides the penalty of exclusion from the state courts. It appears that the contract was in force between the parties prior to the default alleged. Such default on the part of a corporation would not have retroactive effect. The

contention of defendant has been many times denied by the courts. David Lupton's Sons Co. v. Automobile Club, 225 U. S. 489, 32 Sup. Ct. 711, 56 L. Ed. 1177, Ann. Cas. 1914A, 699; Building & Loan Ass'n v. Bedford (C. C.) 88 Fed. 7; Blodgett v. Lanyon Zinc Co., 120 Fed. 893, 58 C. C. A. 79; Groton Bridge Co. v. American Bridge Co. (C. C.) 151 Fed. 871; Johnson v. Breweries Co., 178 Fed. 513, 101 C. C. A. 639; Thomas v. Birmingham Ry. & Power Co. (D. C.) 195 Fed. 340; Cedar Works v. Buckner (C. C.) 181 Fed. 424; Loomis v. Peoples Const. Co., 211 Fed. 453, 128 C. C. A. 125; Bank v. Construction Co., 208 Fed. 976, 126 C. C. A. 64; Boatmen's Bank v. Fritzlen, 221 Fed. 154, 137 C. C. A. 514; Dunlop v. Mercer, 156 Fed. 545, 86 C. C. A. 435; Butler Bros. Shoe Co. v. U. S. Rubber Co., 156 Fed. 1, 84 C. C. A. 167.

[4-7] The error based on the admission of Exhibits M and M² cannot avail. Exhibits M and M² amounted only to an offer to pay an undisputed claim and get a full discharge. Exhibit L was competent to show a tender. There was no prejudicial error in allowing all of these to go in evidence. When Exhibit Y was offered, the objection was general, and no ground of objection was stated. The letter was admitted as a part of the cross-examination of Pincus Kawin, a stockholder of defendant. In such a case wide latitude is permissible. In the present case the reasons for defendant's refusal to take the goods are not foreign to the cross-examination. The court had a wide discretion in the matter of the examination of an adverse party. We are satisfied from the record that the introduction of the letter did not prejudice defendant's case. It had a bearing also upon the alleged slump in the market price of these cards.

[8] We are not impressed with the assignment based on the admission of the testimony of the witness Sheridan. His testimony as to the reasons why cards were not cut and packed before they were ordered was not a departure from the rule with regard to varying written contracts. It tended to show a usage of the trade, known to the parties, and in the light of which the contract was made, and did not serve to modify or vary the contract.

There was no error in refusing to instruct the jury to find for the defendant. The record discloses no situation which would have warranted such a course.

[9-11] It is unnecessary to determine whether or not the contract is severable as to the Christmas and New Year cards, because of the waiver by defendants of any further delivery of New Year cards. The evidence of this waiver is so clear that the court was justified in declining to submit that issue to the jury. There was no default on the part of the plaintiff in the performance, in substance, of the terms of the contract of sale. Clearly the contract did not contemplate that plaintiff tender the entire quantity on or before December 15th without orders from defendant; and, when the order of December 14th was given, plaintiff was entitled to a reasonable time within which to deliver. Alwart Bros. Coal Co. v. Royal Colliery Co., 211 Fed. 313, 127 C. C. A. 599; 234 Fed. 20, 148 C. C. A. 36.

[12] Defendant assigns for error the fact that the trial court refused to instruct the jury, in effect, that there could be no recovery for

the 320,000 cards delivered, but not accepted, or for the 832,000 tendered on December 18, 1911, but not accepted by defendant, or for the 933,000 cards ready for delivery. The contract was an Illinois contract. Under the decisions of that state (Bagley v. Findlay, 82 Ill. 524; Osgood v. Skinner, 211 Ill. 229, 71 N. E. 869) plaintiff had the option, under the facts of this case, to sue for the contract price—in effect, to vest defendant with title, notwithstanding his dissent. This the plaintiff did. The cards had all been appropriated to defendant. In Star Brewery Co. v. Horst, 120 Fed. 246, 58 C. C. A. 362, there had been no appropriation, or order for delivery, and the contracts of purchase differed in other respects. But, if this case were not distinguishable, we should nevertheless apply the principle laid down in the state court.

There is a strong conflict in the authorities as to the right to recover the contract price, instead of the difference between the contract price and the market value. Williston, Sales, § 562; Habeler v. Rogers, 131 Fed. 43, 65 C. C. A. 281; Leyner Co. v. Mohawk Consol. Leasing Co. (C. C.) 193 Fed. 745. Contra, Malcomson v. Reeves Pulley Co., 167 Fed. 939, 93 C. C. A. 339; Fisher v. Newark City Ice Co., 62 Fed. 569, 10 C. C. A. 546; Denver Engineering Wks. v. Elkins (C. C.) 179 Fed. 922; River Spinning Co. v. Atlantic Mills (C. C.) 155 Fed. 466. See, too, where goods are not readily resalable, or where specially manufactured, Manhattan City Ry. Co. v. General Electric Co., 226 Fed. 173, 141 C. C. A. 171; Kinkead v. Lynch (C. C.) 132 Fed. 692; Fisher Hydraulic Stone Co. v. Warner, 233 Fed. 527, 147 C. C. A. 413.

[13] Under the Illinois decisions, the basis of recovery, in our judgment, is that the vendor may at his option vest title in the vendee, despite the latter's repudiation; it is therefore the duty of a federal court, sitting in Illinois and adjudicating an Illinois agreement, to follow the state decisions on matters of personal as well as real property. Dooley v. Pease, 180 U. S. 126, 21 Sup. Ct. 329, 45 L. Ed. 457; In re Richheimer, 221 Fed. 16, 23, 136 C. C. A. 542.

[14, 15] But, even if recovery of the purchase price were deemed in Illinois merely the proper measure of damages for breach of the contract, and if title vested, not on plaintiff's exercise of the option, but only on satisfaction of a judgment, the federal courts, while not bound to follow the state decisions, nevertheless, "for the sake of harmony and to avoid confusion, will lean towards an agreement of views with the state court, if the question seems to them balanced with doubt." Burgess v. Seligman, 107 U. S. 20, 2 Sup. Ct. 10, 27 L. Ed. 359; Sim v. Edenborn, 242 U. S. 135, 37 Sup. Ct. 36, 61 L. Ed. 199. And for the reasons so well stated in Fisher Hydraulic Stone Co. v. Warner, 233 Fed. 527, 147 C. C. A. 413, we have no doubt that at least in such a case as this, in which the cards are at best marketable in any real sense only long after the breach, justice requires that the plaintiff be not compelled to keep them and to recover merely the difference between the contract price and a highly uncertain market value.

[16] There is no merit in defendant's contention that the purchase price could not be recovered under the common counts. When a contract has been fully performed by a plaintiff "and nothing remains

to be done under it but the payment of the compensation in money by the defendant, which is nothing more than the law will imply against him, the plaintiff may declare specially on the original contract, or generally in indebitatus assumpsit, at his election." Throop v. Sherwood, 9 Ill. (4 Gilman) 92. To the same. effect are Lane v. Adams, 19 Ill. 167; Tunnison v. Field, 21 Ill. 108; Adlard v. Muldoon, 45 Ill. 193; Gibson v. O'Gara Coal Co., 151 Ill. App. 424; Shepard v. Mills, 173 Ill. 223, 50 N. E. 709.

[17] ·It is insisted by defendant that it was .error to, reimpanel the jury after it had rendered a sealed verdict,˙correct in substance, but irregular in form, for the purpose of correcting the technical irregularity of the first verdict. The jury made no change in the result of their verdict. The error, if such it might be called, was a mere for-. mality, and it did not furnish good ground for a new trial. Practically the same practice was approved in Moore v. Loan & Trust Co., 70 Ill. App. 210, and is supported by the citation of authorities to the text shown at page 1893, 38 Cyc., and also by Nolan v. East, 132 Ill. App. 634–636.

[18] Defendant insists that it was error for plaintiff to conclude its replication to defendant's third plea to the country, instead of with a verification. The replication sets up no new matter by way of inducement. The matters set out in the inducement constitute merely an admission of the matters of inducement alleged in defendant's third plea. Had the replication concluded with a verification, defendant would have been required to file a rejoinder, which it could not have done without a departure from its plea or rejoining the same matter as alleged in the plea. In Chitty's Pleading, *621, it is said:

"The conclusion must, before the recent rules, in general have been with a verification unless where no new matter was stated by way of inducement, or where the traverse comprised the whole matter of the plea, in which case it might be to the country."

This rule is reinforced by Mr. Sergeant Williams, 1 Saunders, 103, cited at *1211 of Chitty's Pleading.

Finding no substantial error in the record, the judgment is affirmed.